## SUPREME COURT—IN BANCO.

### APRIL TERM—1874.

*Allen, Ch. J., Harris and Judd, J. J.*

THE KING *vs.* JOHN ASEGUT,—APPEAL FROM THE CIRCUIT COURT OF THE 3RD JUDICIAL CIRCUIT.

IN a criminal case where there is evidence on both sides the jury have the right to pass upon the credibility of witnesses, but when the evidence in favor of the defendant so greatly preponderates as to show mistake or prejudice in the minds of the jury in rendering a verdict of guilty, it becomes the duty of the Court to set aside the verdict.

Justice HARRIS delivered the decision of the Court as follows:

The defendant John Asegut, had been prosecuted in the District Court of North Kohala, Island of Hawaii, for the larceny of a cow claimed by one George Holmes to be his property, and being found guilty in the District Court, appealed to the Circuit of the Third Judicial Circuit.

At the trial before a jury at the term of the said Court, holden at Waimea, Hawaii, in November, 1873, the Honorable Justice presiding, instructed the Jury:

That to take property openly under a claim of right was not larceny, but trespass only.

That a felonious intent must be found to constitute the crime of larceny.

That if the jury believed from the evidence that the defendant took the cow in question under a claim of right, they would find him not guilty.

The jury after retiring, returned a verdict of guilty.

To which verdict the defendant, by W. C. Jones, Esq., his attorney, excepted on the ground:

I. That the verdict was contrary to the law and the evidence.

II. That the verdict was against the instructions of the Court; and also gave notice that he would file a motion for new trial. Afterwards defendant's counsel moved the Court to set aside the verdict on the grounds:

I. That the verdict of the jury is against the law.

II. That the verdict of the jury is against the instructions of the Court.

III. That the verdict of the jury is against the evidence.

IV. That the evidence in favor of the defendant so greatly preponderates that it shows mistake or prejudice in the minds of the jury in rendering the verdict of guilty. This motion having been denied by the Court, defendant's counsel filed his exceptions and appealed to this Court.

From the evidence as certified up to this Court, it appears that the cow in question once belonged to Holmes, who claims that he owned her on the 30th day of April last, the day of the alleged larceny of her.

Holmes testified that on the aforesaid 30th day of April, being at his own house, he saw defendant and three other boys driving a band of cattle at about a mile off, and likewise saw them go aside from the road and get a beautiful fat cow (the cow in question) and drive it into their flock. Holmes went after them, and on coming up with them angry

words were exchanged. Holmes drove off the cow, the defendant threatening him to make him trouble (pilikia), and one of the company said that the cow belonged to them. The witness does not say which of them made this remark, though it appears from the testimony that the defendant had the charge of the drive. Holmes further testifies that they made no resistance to his driving off the cow except in language.

Thus it appears that the defendant drove off the cow in open daylight, within sight from Mr. Holmes' house, and when Mr. Holmes interfered, he or one of his companions claimed that he had a right to take the cow, and would make Holmes pilikia for taking it away.

E. Asegut, the defendant's father, testified that he had in April last bought this cow of Holmes, and paid him twelve dollars for it, and told his son to go and get it.

James Noble testifies that he saw E. Asegut (the father) buy the cow of Holmes, and heard him direct his son to go and get it.

Holmes denies that any such purchase was made.

Kahuluhulu testifies that he heard the father tell the son to go and get the cow.

This Court would not set aside a verdict when there is testimony on both sides, and it is merely a question of credibility of witnesses, upon which the jury have the right as well as the best opportunity of passing, but where the evidence in favor of defendant so greatly preponderates as to show mistake or prejudice in the minds of the jury in rendering a verdict of guilty, it becomes the duty of the Court to set aside the verdict.

In this case it would appear that the jury fell into the mistake of supposing that the ownership of the beast in question would decide the guilt or innocence of the defendant, and gave more credit to Holmes' denial of the purchase than to E. Asegut's and J. Noble's assertion of it, which they had

a right to do. But the question in this case was not the ownership of the beast, but the intent of the defendant; and it is plain that the testimony of Holmes, so far from contradicting the testimony of the three witnesses for the defence, confirms them.

It would certainly have been a more proper mode of proceeding if the defendant had gone to Mr. Holmes' house and asked him to deliver the cow, and of course, a mere assertion of a right of ownership when discovered in carrying off a piece of property would have but little weight; and a jury would be right in taking into consideration whether the asserted right of ownership was a mere pretence.

In this case, by the testimony certified up, it does not appear that the claim of right was one started at the moment of or in consequence of being discovered, and the witness E. Asegut (the father), by asserting the purchase and acknowledging the order to his son, directly opens himself to prosecution if his assertion of purchase be untrue.

It may be that there were circumstances at the trial or in the bearing of witnesses that induced the jury to believe that the idea of purchase was an after thought or the result of collusion between the father and son; but such does not appear to be the case, by the record before the Court; and it by no means follows that if E. Asegut falsely asserted that he purchased the beast, his son did not act in perfect good faith in taking the animal by his father's order; and it must be borne in mind, that the son or servant acting under the orders of his father or employer, in the ordinary discharge of his duties or pursuance of his business, raises presumptions in his favor that would not be raised in the case of indifferent persons.

On the testimony, as it has come up, the Court are of opinion that the verdict in this case should be set aside and a new trial ordered, and do adjudge accordingly.

The Attorney General for the Crown.

W. C. Jones for defendant.                    67