*W. B. Lymer* for defendants.

---

# TERRITORY *v.* ITERIO BARQUES AND RAMON BARQUES.

## No. 1262.

EXCEPTIONS FROM CIRCUIT COURT THIRD CIRCUIT. HON. J. W. THOMPSON, JUDGE.

ARGUED MAY 15, 1920.                    DECIDED JUNE 8, 1920.

COKE, C. J., KEMP, J., AND CIRCUIT JUDGE BANKS IN PLACE OF EDINGS, J., ABSENT.

CRIMINAL LAW—*verdict—sufficiency of evidence to sustain.*

Where in a criminal prosecution the jury upon evidence which the law recognizes as sufficient finds the defendant guilty it is beyond the province of this court to disturb the verdict.

SAME—*same—same.*

> The question for our determination is not whether we would or would not have convicted the defendant upon the evidence as disclosed by the record before us but whether there was evidence sufficient to support the verdict as returned.

### OPINION OF THE COURT BY COKE, C. J.

The defendants Iterio Barques and Ramon Barques, who are brothers, were jointly indicted for the crime of murder in the first degree by the grand jury duly impaneled in and for the third judicial circuit. The specific crime laid against the defendants in the indictment was the murder of Simeon Kanui, an Hawaiian youth, at South Kona, Hawaii, on or about the 3d day of March, 1915. The trial of the cause before the jury resulted in a verdict finding the defendants guilty of murder in the second degree. From sundry rulings of the court respecting the introduction of evidence and from the verdict and judgment of conviction as well as the order overruling the defendants'. motion for a new trial the defendants come to this court on a bill of exceptions.

It may be said at the outset that the rulings of the trial court during the progress of the trial having to do with the introduction of evidence are free from error and call for no further comment.

The motion for a new trial attacks the verdict as being contrary to the law and the evidence and the weight of the evidence and supplements this general exception by setting forth "that the evidence in favor of the defendants so greatly preponderates that it shows mistake in the minds of the jury in rendering a verdict against the defendants and that the jury in rendering their verdict were influenced by suppositions not derived from the evidence and contrary to the facts." It appears to be the theory of counsel for the defendants that the case as presented to the jury comes within the rule prescribed in

*King* v. *Asegut,* 3 Haw. 526, where it was held that in case the evidence in favor of the defendant so greatly preponderates as to show mistake or prejudice in the minds of the jury in rendering a verdict of guilty it becomes the duty of the court to set aside the verdict. We will therefore briefly review the evidence in order that it may be determined whether the case at bar falls within the rule announced.

It is undisputed that the defendant Iterio Barques, a Porto Rican, during the month of March, 1915, was, and for a long time prior thereto, had been, employed by Chas. Hooper on a small ranch some five miles up the mountain from the main government road leading through the district of South Kona, Hawaii; that on or about the 1st day of March, 1915, Simeon Kanui, who was also an employee of Mr. Hooper's, went up the mountain to the cabin occupied by the defendant Iterio, taking with him sundry supplies for the ranch household. Iterio at the time occupied the ranch cabin alone. Several days after the departure of Simeon for the ranch Iterio arrived at the home of Chas. Hooper, who lived down the mountain and near the main government road. Iterio remained at the home of Mr. Hooper from Friday until the following Monday when he, together with Hooper, a Japanese and a young man by the name of Asiu, returned to the ranch house and upon arriving there Simeon was not to be found nor has he since been seen nor has his dead body or any trace thereof ever been discovered. The sheriff of the County of Hawaii together with other members of the police force immediately instituted a search for Simeon and prosecuted their attempt to solve the mystery of his disappearance until finally the grand jury in October, 1918, acting upon the evidence presented to it by the authorities, returned an indictment against

the defendants charging them with the murder of the missing youth.

The strongest evidence for the prosecution, and the only evidence which actually established the *corpus delicti,* came from the witness Joe Barques, a son of the defendant Ramon Barques. This witness at the time of the alleged crime was about ten years of age. He testified before the jury that he and his father, Ramon Barques, proceeded on foot from their home in the district of Kau, Hawaii, to the Hooper ranch some forty miles distant for the purpose of visiting his uncle Iterio Barques; that upon arriving there Iterio and Simeon Kanui were occupying the ranch cabin; that the day following their arrival, and very early in the morning, they all four proceeded up the mountain a distance of four or five miles for the purpose of hunting wild goats; that they came to a rugged and rocky place high up on the mountain side and after two goats had been shot by Iterio and a live one caught and tied by Simeon, and while Simeon was standing some distance apart from the other three, Iterio said (speaking in the Porto Rican language), in Joe's hearing, that he intended to kill Simeon because Simeon had teased him while he was drunk and he directed Ramon to proceed to where Simeon was standing and attract his attention away from Iterio so that Iterio could shoot him without being detected by his intended victim; that Ramon did as directed and that Iterio approached to within a short distance of Simeon and shot him in the back; that Simeon uttered a cry and fell to the ground shot dead. The two defendants then took from Simeon's body his shoes and watch and conveyed the body into a cave where it was hidden from view and after about thirty minutes they emerged from the cave and the three returned to the cabin. Thereafter Joe and his father returned to their home at Kau, sleep-

ing the first night at the home of an Hawaiian by the name of Pohaku Papa on the government road in South Kona.

There is some other evidence which connects the defendants with the death of Simeon, the most important of which is the testimony of Antone Amarino, a police officer, to the effect that Iterio admitted to him that he had done wrong to the Hawaiian and made use in this conversation, which was in the Porto Rican language, of the word "kill;" and the further testimony of Antone Sanches that Iterio told him at Waialua, Oahu, that he (Iterio) had mistaken Simeon for a wild bull approaching through the brush and had shot him. Manuel Barques, another son of defendant Ramon, testified that he overheard this conversation.

On the other hand other facts and circumstances were brought out at the trial which point in the opposite direction, that is to say, the apparent lack of any motive for the killing; the fact that no trace of the remains of Simeon was ever found although the sheriff and other police officers were led by Joe to the situs of the alleged crime and to the very cave in which he claims to have seen his father and Iterio place the body of the deceased; the fact that the records of the teacher of the government school at Waiohinu where Joe was attending school show that at the time of Simeon's disappearance Joe was present in school at Waiohinu forty miles distant from South Kona; the extreme youth of the witness Joe and the fact that he first divulged his knowledge of the crime some two years after it is alleged to have been committed; the improbability of the testimony of the witness Sanches because he locates the village of Waialua on the Island of Oahu, where he claims to have had the conversation with Iterio, as being between Ewa and Honolulu, which is a geographical untruth. Another strange cir-

cumstance which has not been satisfactorily explained is the fact that when Joe and his father Ramon arrived at the main government road on their way home in the evening of the day it is claimed by Joe that Simeon was murdered Ramon delivered a letter written in good Hawaiian to one Kealoha Pauole. The letter purported to come from Iterio requesting Kealoha to advance a small sum of money to his brother Ramon. The evidence strongly indicates that none of the Porto Ricans could write the Hawaiian language hence this circumstance lends great strength to the testimony of the two defendants to the effect that Simeon wrote the letter for and at the request of Iterio at the time Ramon and Joe departed from the Hooper ranch on their return home, indicating that Simeon was alive at that time.

It must be assumed that the jury relied mainly upon the strength of the testimony of the youth Joe otherwise the defendant Ramon could not have been convicted at all and it is doubtful if Iterio could have been convicted of the crime of murder.

It is undoubtedly true that the testimony of Joe Barques established all the necessary elements of the offense charged, that is to say, the *corpus delicti* or body of the offense, the fact of death and the criminal agency of the defendants as the cause thereof. And irrespective of the other evidence it was solely for the jury to determine whether Joe was to be believed or not and it is not within the province of this appellate court to substitute its opinion for that of the jury respecting the credibility of the witnesses. This doctrine has been repeatedly adopted in this jurisdiction as well as in other jurisdictions. "Because there was evidence on which, if believed, a doubt of the defendants' guilt might be based, we cannot say that such doubt ought to have arisen, or that it was in fact produced in the minds of the jury. The

doctrine which in effect requires the opinion of the court to be substituted for that of the jury concerning the credibility of the evidence, even when guilt is claimed upon circumstantial evidence alone, is not accepted by this court as law" (*Territory* v. *Watanabe Masagi,* 16 Haw. 196, 226, 227). "The question for our determination, however, is, not whether we would or would not have convicted the defendant upon the evidence as disclosed by the record before us, but whether there was evidence sufficient to support the verdict as returned" (*Territory* v. *Chung Nung,* 21 Haw. 214, 217). The same principle was before the supreme court of California in the late celebrated case of *The People* v. *Mooney,* 177 Cal. 642. The California court there adopted the doctrine long prevailing in this Territory to the effect that the question whether or not a witness was telling the truth is a matter peculiarly for the jury and cannot properly be submitted to an appellate court. And to the same effect is the case of *Territory* v. *Alcantara,* 24 Haw. 197, 207, where the following language of Chief Justice Cooley in *People* v. *Garbutt,* 17 Mich. 9, 27, is quoted with approval: "The trial of criminal cases is by a jury of the country, and not by the courts. The jurors, and they alone, are to judge the facts and weigh the evidence. The law has established this tribunal because it is believed that from its numbers, the mode of their selection, and the fact that the jurors come from all classes of society, they are better calculated to judge of motives, weigh probabilities, and take what may be called a common sense view of a set of circumstances, involving both act and intent, than any single man, however pure, wise and eminent he may be. This is the theory of the law; and as applied to criminal accusations, it is eminently wise and favorable alike to liberty and justice. But to give it full effect the jury must be left to weigh the evi-

dence, and to examine the alleged motives by their own tests."

In the case at bar a jury of the country after a fair trial and upon evidence which the law recognizes as sufficient has found the defendants guilty of the murder of Simeon Kanui. If we could properly judge of the facts and weigh the evidence we might arrive at a different conclusion. The chief executive of the Territory, to whom final appeal can be made, may conclude that there is such a strong probability of a miscarriage of justice in this case as to warrant executive clemency to the defendants, but the inflexible rules of law place it beyond the province of this court to disturb the verdict of the jury.

The defendants' exceptions are overruled.

*W. H. Beers,* County Attorney of Hawaii, for the Territory.

*H. G. Middleditch* for the defendants submitted the case upon the briefs.