## TERRITORY OF HAWAII *v.* CHUNG NUNG.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JULY 22, 1912.                    DECIDED AUGUST 7, 1912.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

EVIDENCE—*circumstantial—inferences.*

In a case of circumstantial evidence, there being evidence of certain facts, if believed by the jury, from which facts inferences of guilt can reasonably be drawn by the jury, the verdict cannot be disturbed.    In reaching its conclusion the jury is at liberty to accept and act upon the evidence consistent with the theory of guilt and to reject the evidence inconsistent therewith, provided the verdict returned is supported by evidence as to all the essential and material elements of the crime charged.

ID.—*admissibility of testimony.*

At the time the defendant was arrested the officers, for the purpose of making an examination of his person, directed him, but without the use of any force, or threats, or the holding out of any inducement, to remove a portion of his clothing, which he did without objection.    The purpose of the examination thus made was to obtain proof of a physical fact, and not to compel the defendant to be a witness against himself.    At the trial of the defendant testimony by one of the officers as to the result of the examination was admissible.

ID.—*admissibility of evidence.*

A statement in the nature of a confession made by a person

Territory v. Chung Nung, 21 Haw. 214.

while in jail and before any charge is entered against him, made in the presence of the deputy city and county attorney and police officers, and without the advice of counsel, but made freely and voluntarily, is admissible in evidence.

OPINION OF THE COURT BY DE BOLT, J.

The defendant was indicted on February 2, 1912 (ante p. 66), for the crime of carnal abuse of a female child under the age of twelve years, alleged to have been committed by him on December 30, 1911, upon one Lili Ulii, otherwise known as Lili Klawai. The defendant was convicted and sentenced to imprisonment for life at hard labor. He brings the case here on exceptions.

The Territory relied for conviction upon evidence, as disclosed by the record before us, from which the jury could have found facts substantially as follows: That at the time the crime is alleged to have been committed the family, of which Lili was a member, resided at Kaalaea, district of Koolaupoko; that their home was at least a quarter of a mile from the nearest habitation and about the same distance from the public road; that the family consisted of Kane Kukikila and his wife, Lily Kane, and three foster children, a boy named Kukekila, about nine years of age, Lili, about four and one-half years of age, and another little girl, named Haole, about two years of age; that the defendant was employed as cook at a rice mill near the home of this family; that about noon, on December 22, 1911, when Kukekila returned to the premises (it does not appear where he had been), the defendant was with him, and they, the defendant and the boy, and the two little girls went into the house to eat poi, while Kane Kukikila and his wife went to a shed near by to wash and cook taro, in which work they were engaged during all the time the defendant and the children were in the house; that after they had finished eating poi, the defendant sat on a trunk and placed Lili on his lap astride his legs, her back to his face, and upon her expressing a desire to get down, he said, "no, by and bye;" that she was on the de-

fendant's lap "a long time," as testified to by Kukekila, who, for the purpose of showing what he meant by "a long time," sat on the interpreter's lap a minute and a half; that neither Kane Kukikila nor his wife saw the defendant leave the premises, but nearly a half hour after they had seen him enter the house with the children, the two little girls ran down to the place where they were cooking taro, saying, "five cents, five cents," and on being asked, "where you get your five cents," they said, "from the pake;" that on December 30, 1911, the defendant again appeared at the home of these people, on which occasion Kane Kukikila was absent, but his wife and another woman were on the verandah in front of the house, a Chinaman, Su Suey, was at the side of the house pounding poi and the children were playing in the back yard; that the defendant spoke to Su Suey and passed on to the rear of the house where, while he was resting and eating some abalone under a tree (the location not being definitely shown by the evidence), Lili ran up to him and he gave her some of the abalone and took her on his lap, placing her astride his legs, facing him, with his arms around her; that the defendant returned from the rear of the house in about thirty minutes and left the premises by the same way he had gone in; that this little girl, Lili, on the occasions mentioned, had on nothing but a little dress and chemise—she never wore drawers; that the defendant, during the period including his visits to the home of these people and his relations with this little girl, had chronic gonorrhea, which, as he admitted, he had contracted from a Japanese woman sometime prior to his visits to these premises; that on or about January 10, 1912, it was discovered that Lili was suffering from venereal disease, and upon an examination by physicians it was found that she not only had gonorrhea of a most malignant type, but that her hymen was ruptured; that in the opinion of the examining physicians, while the rupture of the hymen may be the result of various causes, in the case of small girls the fact of gonorrhea being present tends to narrow the number of causes down to that of penetration.

Territory v. Chung Nung, 21 Haw. 214.

It does not appear that the defendant had any legitimate purpose in visiting the premises on the occasions mentioned. It is true that on the second occasion he was sent by his employer to turn on the water used in the rice mill, but it appears that his way would properly have been along the ditch and not through these premises over which there was no trail. It also appears that none of the family during the period from December 22 to December 30 had venereal disease.

The little girl, owing to her extreme youth, was not sworn as a witness. Neither did the defendant testify, and the evidence adduced on his behalf, so far as it was in conflict with the evidence of the Territory, was a matter exclusively within the province of the jury for consideration.

It is urged by counsel for the defendant that the evidence is not sufficient to sustain the verdict; that the testimony in the case, being purely circumstantial, is not inconsistent with every reasonable theory of innocence; that the jury was swayed by the eloquence of the city and county attorney; and that the verdict can only be accounted for on the ground of passion and prejudice.

The question for our determination, however, is, not whether we would or would not have convicted the defendant upon the evidence as disclosed by the record before us, but whether there was evidence sufficient to support the verdict as returned. In our opinion the evidence, when considered in connection with all the legitimate and reasonable inferences which the jury was warranted in drawing therefrom, was sufficient to support the verdict. The record fails to disclose any fact or matter tending to show that the jury was influenced by passion or prejudice. There was evidence, not direct it is true, but circumstantial, tending to establish the *corpus delicti*. The evidence tending to show that the defendant committed the crime charged was likewise circumstantial. There being evidence sufficient to go to the jury, it was exclusively within the province of the jury to determine the weight and effect of the evidence, to con-

sider the conflicting theories of guilt and of innocence, and, finally, to determine from all the evidence, direct and circumstantial, including all reasonable and proper inferences to be drawn therefrom, whether the defendant was guilty as charged or not. In reaching its conclusion the jury was at liberty to accept and act upon the evidence consistent with the theory of guilt and to reject the evidence inconsistent therewith, provided that the verdict returned was supported by evidence as to all the essential and material elements of the crime charged.

Assuming, as we may, that this little girl of tender years was suffering from a loathsome venereal disease and that her hymen was also ruptured,—these facts,—viewed in the light of the expert opinions of the examining physicians, were reasonably sufficient to warrant the jury in finding that the child had been carnally abused, her physical condition being such that the jury could have reasonably inferred from the facts proven the ultimate fact of penetration by the male organ. To these facts let us add the further facts, namely, the diseased condition of the defendant, his visits to the premises, and his conduct with the little girl, and we then have a combination of facts, which, upon the sound principles of reason, satisfactorily sustain the verdict. These facts, it seems, were sufficient to satisfy the understanding and conscience of the jury. In cases of circumstantial evidence "what circumstances will amount to proof, can never be matter of general definition; the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. On the one hand, absolute metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if they produce moral certainty, to the exclusion of every reasonable doubt." *Browning* v. *State,* 33 Miss. 47, 77.

In *Lee* v. *State,* 156 Ind. 541, 546, the court said: "Where the circumstantial evidence in a case is of such a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to or tending to prove the guilt of the accused,

and the other favorable to his innocence, then, under such circumstances, it is not within the province of the court to determine which inference ought to have controlled the jury."

Counsel for the defendant challenged the admissibility of the testimony of officer Apana, who was permitted to testify over the objection of the defendant that at the time of the arrest of the defendant, he and the chief of detectives, for the purpose of making an examination of the defendant's person, directed him to remove his trousers, which he did without objection, and that they then made the examination. It is urged that this was requiring the defendant to testify against himself. There is no evidence tending to show the use of any force, or threats, or the holding out of any inducement. The testimony, we think, was clearly admissible. The purpose of the examination was to obtain proof of a physical fact, and not to compel the defendant "to be a witness against himself." He was not required to say anything or to make any statement. It was held in *State* v. *Ah Chuey*, 14 Nev. 79, 33 Am. Rep. 530, a carefully considered case, that "no evidence of physical facts can, upon any established principle of law, or upon any substantial reason, be held to come within the letter or spirit of the Constitution." Wigmore's view is, that "it is not merely compulsion that is the kernel of the privilege, in history and in the constitutional definitions, but testimonial compulsion." 4 Wig. Ev., §§2263, 2265. See also *State* v. *Graham*, 41 So. 90, 91; *People* v. *Gardner,* 144 N. Y. 119, 127, 128; *State* v. *Jones,* 153 Mo. 457, 459; *O'Brien* v. *State,* 125 Ind. 38, 42.

It is also urged on behalf of the defendant that the "court erred in the reception of evidence before the *corpus delicti* was proven." There is no merit in this contention. The order of admission of testimony is a matter resting in the sound discretion of the trial court. Moreover, the record fails to show that the defendant at any time made any objection as to the order of proof.

While the defendant was in jail and before any charge was

entered against him he was examined by the deputy city and county attorney, A. M. Brown, regarding his conduct with this little girl. The examination was conducted in the presence of officers McDuffie, Kellett, Apana and Akui. Officer Apana acted as interpreter. The defendant was informed as to Mr. Brown's official position and that he was there for the purpose of asking him questions. He was also informed that it was his privilege to answer the questions or not, "just as he felt;" that he was not to be coerced or intimidated, but that whatever answers he gave might be used against him. The defendant said he was "willing to tell the truth." What the defendant said on that occasion officer Apana was permitted to testify to at the trial over the defendant's objection, the substance of which we have set out in the statement of the case. Just before the examination of the defendant was begun his counsel called at the jail and claimed the right to advise the defendant as to his rights then as well as during the examination. Counsel was not permitted to advise the defendant nor was he permitted to remain during the examination. It is now urged that the testimony of officer Apana was not admissible, the contention being that the defendant, by reason of his situation, surrounded by police officers, and denied the advice of counsel, was not a free agent, and that his statement was not voluntary. We see no merit in this contention. There is no evidence tending to show the use of any force or threats, or the holding out of any inducement, or that he was intimidated by the presence of the officers or by the absence of his counsel. It does not follow that because the defendant made his statement in the presence of officers, or that his counsel was not permitted to remain and advise him as to his rights, that he was intimidated, or coerced, or that he did not make his statement freely and voluntarily. The facts disclosed bring the case clearly within the rule laid down in *Territory* v. *Matsumoto,* 16 Haw. 267. The testimony of the witness Apana was admissible. See *Hopt* v. *Utah,* 110 U. S. 574, 583, 587; *State* v. *Icenbice,* 126 Ia. 16, 20; *State* v.

*Wescott,* 130 Ia. 1, 6; *Greer* v. *State,* 45 S. W. (Tex.) 12.

Upon the ground that the indictment alleged that the crime was committed on December 30, 1911, the defendant objected to the admission of evidence as to his visit to the home of the little girl on December 22, 1911. The evidence was properly admitted. Time was not of the essence of the crime charged and it was not necessary to prove it as laid. *Territory* v. *Crawford,* 18 Haw. 246; *Hardy* v. *United States,* 186 U. S. 224, 225, 226; *Palin* v. *State,* 38 Neb. 862, 865; 1 Bishop's New Cr. Proc., §§386, 400.

The defendant also contends that the court erred in not granting a new trial on the ground of newly discovered evidence The so-called newly discovered evidence was that the defendant did not have gonorrhea.

It appears that at the defendant's request he was examined on or about January 31, 1912, by Dr. C. B. Wood. The defendant, in support of his motion for a new trial, and the Territory, in opposition thereto, each filed an affidavit by Dr. Wood as to his examination of the defendant. Upon reading those affidavits it appears that Dr. Wood was not "willing to swear that the defendant did not have gonorrhea." The evidence of Dr. Wood was cumulative, and not so favorable to the defendant as the evidence of Dr. Moore, who made an examination of the defendant and testified on his behalf at the trial. Dr. Moore, when asked if the defendant had gonorrhea, testified that "the probability is that he did not have it."

It appears that Dr. Sinclair, who was called as a witness by the Territory, and who examined the defendant before either Dr. Wood or Dr. Moore examined him, did not hesitate to say that the defendant had "chronic gonorrhea."

The exceptions are overruled.

*J. W. Cathcart, City and County Attorney,* for the Territory.

*Lorrin Andrews (Eugene Murphy* with him on the brief) for defendant.