No. 15,528.

WYMER *v.* THE PEOPLE.
(160 P. [2d] 987)

Decided July 2, 1945.

44

Mr. O. Otto Moore, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was tried for murder. On a verdict of guilty in the first degree, fixing the penalty at life imprisonment, he was sentenced. To review that judgment he prosecutes this writ. The principal questions raised by his twenty-seven assignments are: 1. The sufficiency of the evidence to support the verdict. 2. The correctness of certain rulings on the admission of testimony. 3. Defendant's right to a separate trial on a special plea. 4. The refusal of three tendered instructions. In our opinion assignments not necessarily connected with these and disposed of by their resolution, merit no consideration.

The people's evidence disclosed that on April 10, 1943, defendant had killed two boys, Flindt and Mattas, by pushing them from a precipitous cliff, and that he had removed and appropriated some of their clothing and a watch. The information charged the murder of Flindt. Defendant at the time was sixteen years of age and Flindt eleven. Defendant entered a general plea of not guilty, and, two weeks later, a special plea of not guilty by reason of insanity, and demanded a separate trial on the latter. He was committed to the Colorado psychopathic hospital for observation and a skilled specialist appointed by the court to examine him and report. The cause came on for trial June 28, 1943, at which time the

motion for a separate trial was denied and the cause proceeded on all issues.

The special plea was, "not guilty by reason of insanity at the time of the alleged commission of the crime, and since." In such cases the statutes provide:

"Upon the making of any such plea of insanity, the judge shall forthwith commit the defendant to the Colorado psychopathic hospital at Denver * * * where the defendant shall remain under observation for such time as the court may direct, not exceeding one month. The judge may also appoint a commission of one or more physicians, specialists in mental diseases, to examine the defendant during said period; and the court may call and examine said physicians as witnesses at the trial * * *." '35 C.S.A., c. 48, §508.

"If the plea be * * * 'not guilty by reason of insanity, at the time of the alleged commission of the crime and since,' after the period of observation, the case, in the discretion of the court, may be either set for trial on the insanity issue alone * * * or be tried on the main case." '35 C.S.A., c. 48, §509.

The ground of defendant's motion is thus stated therein: "Depending upon the proper adjudication of the question of the sanity of defendant evidence may or may not be competent for submission to the jury in the trial of the main case. If, however, the issue of sanity or insanity and the issue of participation by the defendant in the commission of the alleged crime are attempted in one trial there will be confusion and complicated questions which can only tend to confuse the minds of the jurors, to the prejudice of the defendant."

The specialist appointed to examine defendant performed that duty, and his report was before the judge and considered by him when the motion to separate was overruled. That report, however, is not in the record. The commissioner and other specialists who testified were unanimously of the opinion that defendant

was insane. All testimony to the contrary came from laymen.

1. We find no occasion to abstract the evidence. Suffice it to say that, assuming defendant's sanity, it overwhelmingly supports the verdict. On the question of defendant's sanity the evidence was conflicting and, assuming no error in its admission, the question was solely for the jury. While the experts gave defendant an I. Q. of 62 and the mental age of a boy little past nine years, one lay witness, apparently qualified to speak on that subject, fixed his mental age, in all matters relating to crime, at thirty years. Moreover, the testimony of the experts was materially weakened by the fact that one of them stated, "I think, in an abstract sense, he realized the nature of the act;" another, "He might have a childish idea of what is right and wrong;" and the other gave it as his opinion that a child of nine years had no ability to distinguish. All argument on this phase of the case has been made in, and answered by, this court heretofore in a case in some respects even stronger from the standpoint of the testimony of the experts and in which the defendant was older and his mental capacity estimated lower than here. There the penalty was fixed at death and we affirmed the judgment. Repetition here is needless. *Arridy v. People,* 103 Colo. 29, 82 P. (2d) 757. However, the evidence of a lay witness who gave it as his opinion that defendant was sane was vigorously protested below and is here attacked as highly prejudicial. One Comer, a deputy sheriff, testifying for the people on rebuttal, is alleged to have given an opinion based upon facts obtained from hearsay and to have indulged in argument in support thereof. Strictly confined, as this contention is, to his rebuttal testimony, some support therefor appears. But Comer had been examined in chief and therein we find ample support for his essential facts. He had been in charge of defendant during his confinement in jail, saw and talked with him almost daily for

approximately seven weeks, heard the various and conflicting accounts which he gave of the transaction, and visited with him the scene of the crime. In the light of all this we search in vain for anything in Comer's testimony, unrelated to and unsupported by his evidence in chief, which could properly be considered as prejudicial.

*Graham v. People,* 95 Colo. 544, 38 P. (2d) 87, is repeatedly cited, and strongly relied upon by defendant. In our opinion the case is not in point and contains nothing helpful here. There the sole defense to the charge of murder was insanity. All the evidence was that defendant was insane. The jury nevertheless found him sane and returned a verdict of guilty in the first degree fixing the penalty at death. He was so sentenced. The conclusion of the presiding judge was that he was unquestionably insane but, believing he had no discretion, he pronounced sentence. On the strength of *Piel v. People,* 52 Colo. 1, 119 Pac. 687, we reversed the judgment.

The most that can be said on this question is that the evidence was conflicting and we are bound by the verdict and the trial court's refusal to vacate it. We doubt not the jurors made the best resolution possible without the advantage of seeing and hearing defendant under examination and cross-examination, for he did not take the stand. Unless the refusal of his three tendered instructions was prejudicial, or the refusal of the court to award him a separate trial on his plea of insanity was so, this judgment must stand.

2. There was evidence that defendant, immediately after the commission of the offense, and later while in custody, had made certain confessions or admissions which, if voluntary, and the speaker sane, entangled him in a mesh from which escape was impossible. Since his special plea put his sanity, hence his ability to bind himself, in issue, his counsel demanded a ruling excluding comment thereon by the district attorney in his opening statement. Thereafter, when evidence of

such confessions or admissions was offered in chief by the people, defendant objected on the same ground. In other words his counsel in effect said, This defendant is insane. His special plea suspends the usual presumption to the contrary. If insane he was powerless to bind himself by anything he might say. Until that issue is tried and adjudged against him neither comment on any such statements he is alleged to have made, nor testimony that he made them, should go to the jury. Objections and exceptions followed adverse rulings on the foregoing and error is assigned thereon. These are included in, considered, and we think disposed of, in our examination and conclusion on the court's denial of defendant's motion for a separate trial.

3. The principal ground urged for a reversal of this judgment, and that with which all others are so interwoven that they must fail if it fails, is the adverse ruling on defendant's motion for a separate trial on the issue of insanity. Of the statutes above quoted, section 509 was passed in 1927, while section 508 was promulgated in 1935. The principal changes thereby made in pre-existing law are the requirement for a separate plea of the defense of insanity, the compulsory commitment of defendant for examination, and the discretion vested in the court to try the sanity issue separately or in the main case. Bishop's New Criminal Procedure (2d ed.) vol. 3, pp. 1641-49; *Webber v. Commonwealth,* 119 Pa. 223, 13 Atl. 427. But, says counsel for defendant, since said section 508 compels the accused, upon entry of a plea of insanity, to submit to special incarceration, observation and interrogation, and since this procedure may bare before the jury his entire life and necessitate the production of evidence otherwise inadmissible and often highly prejudicial, on the trial of the main issue, a defendant dare not plead insanity unless he be protected by a separate trial. Otherwise he is obliged to give evidence against himself—evidence of conduct, character, reputation, and possibly of other offenses, all

in direct violation of his constitutional right. Colorado Constitution, art. 2, §18. All this has heretofore been presented, argued, and refuted in this court in a case wherein we pointed out that no change in the matter of incarceration and observation had been provided by the act of 1927 save from jail to hospital, and held that act no violation of defendant's constitutional exemption from testifying against himself. We find no occasion to amplify what we there said. *Ingles v. People,* 92 Colo. 518, 524, 22 P. (2d) 1109. Moreover, if defendant is now correct in his contention as above noted, then the discretion which the statute vests in the trial court is nonexistent and every conviction of crime prior to 1927, wherein the issue of insanity was directly involved, was unconstitutional.

We are thus forced to the conclusion that the order overruling the motion for a separate trial involved no abuse of discretion and that thereafter the proper procedure was that followed prior to the passage of the act; hence the refusal of the court to restrict the opening statement of the district attorney, and his ruling on evidence concerning admissions of defendant, were not prejudicial. These and other rulings on similar objections are finally vindicated, or the error, if any, rendered harmless by the verdict finding defendant sane.

4. Defendant's instruction No. 1 related to the incompetency of an insane person to give evidence or bind himself by statements. So far as applicable it is covered by instructions 16 and 20 given. His instruction No. 2 was merely a quotation from our opinion in the Graham case, supra, applicable there, but not intended as an instruction, and wholly inapplicable here. His instruction No. 3 was a particular reference to the testimony of minors. It was fully covered by general instruction No. 20 on the weight of evidence and the credibility of witnesses.

Finding no reversible error in this record the judgment is affirmed.

Mr. Justice Knous and Mr. Justice Hilliard dissent.