# TERRITORY OF HAWAII *v.* PETER L. YOUNG AND HILDA M. NOZAWA.

## No. 2545.

SUBMITTED AUGUST 17, 1945.                    DECIDED OCTOBER 1, 1945.

KEMP, C. J., PETERS AND LE BARON, JJ.

The defendants were indicted jointly and upon a joint trial were convicted of the crimes of abortion and murder in the second degree. The offenses charged are based upon the same transaction and are alleged in separate counts. The within joint writ of error presents for review the judgment entered upon the verdict.

Upon arraignment the defendant Nozawa interposed a demurrer to the second count of the indictment, which charged murder in the second degree upon the single ground that the allegations thereof did not state facts sufficient to constitute the crime of murder in the second degree as made and provided by the laws of the Territory of Hawaii and in particular as made and provided by sections 5990 to 5992, both inclusive, and by section 5996 of the Revised Laws of Hawaii 1935. The demurrer was overruled.

After the trial was commenced the defendant Young filed a motion to suppress certain evidence, to wit, instruments, office records and a medical book taken by the police from his office on September 28, 1942, ruling upon which motion, by agreement between counsel for defendants and the court, acquiesced in by the prosecuting officer, was abated pending the conclusion of the evidence. The taking of evidence having been concluded, in the course of which the evidence sought to be suppressed had been admitted in evidence over the objection of defendants, the defendant Young, preliminary to resting, renewed his motion to suppress and the same was denied.

Plaintiffs in error in their opening brief specify the following errors: (1) that in the course of the trial the court erred in admitting in evidence, over objection, exhibits 8 and 9, being purported statements of Hilda M. Nozawa to the police; that the court erred in denying defendants' motion to strike exhibits 8 and 9, it affirmatively appearing that said statements were not voluntary

and their use in said trial prejudicial to the said defendants, particularly the said Peter L. Young; (2) that the court erred in denying the motion of defendant Peter L. Young to suppress certain evidence obtained by the police as a result of an unauthorized and illegal search of his premises on September 28, 1942; (3) that the court erred in overruling demurrer to the indictment herein, said demurrer being directed to the second count of said indictment which charged the defendant with the crime of murder in the second degree.

The specifications of error will be considered in their order.

1. This specification of error presents for review the admissibility in evidence of two incriminating statements made by the defendant Nozawa to the police on September 29, 1942, claimed by plaintiffs in error to be factually and legally involuntary.

At the time these statements were made by the defendant Nozawa no warrant of arrest had been issued against her; she had come to the police station voluntarily at about 8 o'clock p. m. on September 28 preceding, but shortly after her arrival had been arrested for investigation under the provisions of Revised Laws of Hawaii 1935, section 5404, incorporated in the 1945 revision as section 10705, and detained at the police station. On the next day, September 29, 1942, while she was thus under arrest and detained at the police station, her statements were taken, the first in the morning beginning at 9:37 o'clock (admitted as prosecution's exhibit 8), the second in the afternoon beginning at 2:15 o'clock (admitted as prosecution's exhibit 9). They take the form of interrogations propounded by a police detective and answers given in reply by Miss Nozawa, stenographically reported by an official reporter of the police department. The second statement is substantially the same as the first. The subjects of in-

terrogation are the same in both. In many instances the questions propounded are the same. The occasion for repetition was the presence in the first statement of reference to another pending criminal case against the defendants upon a charge of abortion and the desire on the part of superior authority that all reference to the other case be omitted.

Revised Laws of Hawaii 1935, section 3834 (now R. L. H. 1945, § 9846), provides: "No confession shall be received in evidence unless it shall first be made to appear to the judge before whom the case is being tried that such confession was in fact voluntarily made * * * ." We assume that the term "confession" as used in the statute quoted includes incriminating statements. The Territory, as part of its case in chief, assumed the duty imposed by the statute. Upon the statements being offered in evidence by the prosecution, the court, at the request of the defendants, received in the absence of the jury the evidence of the defendant Nozawa, the author of the statements, tending to show that the statements were not voluntarily made. The preliminary hearing having been concluded, the statements were admitted in evidence over the objections of the defendants. The preliminary evidence offered on behalf of the defendants was repeated in the presence of the jury as a part of the defendants' case in chief.

Incriminating statements, to be admissible in evidence, must be voluntary. The adverb "voluntarily" as applied to the admissibility in evidence of extrajudicial confessions has been construed by this court[1] as inclusive of the several tests prescribed by the leading authorities on evidence.[2]

---

[1] King v. Marks and Butler, 1 Haw. 81; The King v. Paakaula and Kahauliko, 3 Haw. 30; Ter. Haw. v. Matsumoto, 16 Haw. 267; Territory v. Chung Nung, 21 Haw. 214; Ter. v. Fukunaga, 30 Haw. 697.

[2] 1 Greenleaf, Evidence (16 ed.) § 219a, p. 354; 2 Wharton, Criminal Evidence (11 ed.) § 591 *et. seq.*, p. 978 *et seq.*; 3 Wigmore, Evidence (3d ed.) § 821 *et seq.*, p. 238 *et seq.*

Whether a confession is voluntary is, however, a mixed question of law and fact.[3] And where a preliminary hearing is had to determine the admissibility of a confession, it becomes the duty of the court to find the facts and to apply to the facts so found the legal tests of admissibility. In so doing the court acts as a trier of the facts and, where the facts are not in conflict, determines the admissibility of the confession as a matter of law. But where, as here, the evidence is conflicting, the findings of fact of the court, if supported by more than a mere scintilla of evidence, are conclusive upon the question of preliminary admissibility.[4] The situation is analogous to the trial of a term case, jury waived. The rules of law giving support to the findings of fact of a judge at term, jury waived, are equally applicable. In this jurisdiction the rule has been recognized that although a court may, upon a hearing preliminary to the admission of a confession in evidence, determine that the confession was freely and voluntarily made where the evidence is conflicting, the ultimate determination of its voluntary character is for the jury.[5] And the question of whether the statements made by Miss Nozawa were voluntarily made was left to the ultimate determination of the jury upon proper instructions.

The Territory, upon its case in chief, sustained the burden of proof imposed upon it by section 3834, *supra*. Upon the preliminary hearing, the defendant Nozawa testified that the answers given by her in both statements were false; that previous to making her statements she had been importuned both by the police matron and by the detective, who subsequently took her statements, to

---

[3] State v. Bartley, 34 La. Ann. 147.

[4] Bonner v. The State, 55 Ala. 242, 246; State v. Staley, 14 Minn. 75, 81; State v. Burgwyn, 87 N. C. 572, 573; Tarasinski v. State, 146 Wis. 508, 131 N. W. 889, 890.

[5] Territory v. Alcosiba, 36 Haw. 231, 235.

side with the police; that they had stated to her that it was not against her but against her codefendant Peter L. Young that their efforts were directed; that she had been told by the detective who subsequently interrogated her what to say and had been admonished by him to answer questions only in the affirmative or negative and that if she were in doubt as to how she should answer and indicated such doubt her interrogator would repeat the question, in which event her answer should be in the affirmative; that she was under a nervous strain due to her detention the previous evening in the women's cell block, to the conditions there obtaining and to her own physical condition; that she had wanted to go home and that the detective who arrested her and subsequently interrogated her had promised that as soon as her statement was taken she would be allowed to go home. This evidence had been anticipated by the defense upon the cross-examination of the prosecution's witnesses and had been denied by them.

It was the exclusive province of the court upon the issue preliminarily presented to it to determine the weight and credibility of the evidence. Moreover, in addition to the oral evidence adduced, he had an opportunity of personally observing the relative mental and physical qualifications of the parties to the statements and their conduct and demeanor upon the stand. The admission of the statements in evidence was tantamount to a finding by the court that the defendant Nozawa was unworthy of belief and that contrary to the grounds alleged for their repudiation they were freely and voluntarily made and expressed the truth. Upon this statement of the case it is impossible for us to say what evidence given by her upon the preliminary hearing was accepted by the court as true and what was rejected by it as false.

Moreover, upon writ of error, the method of appeal resorted to in this case, this court is expressly prohibited

by statute (R. L. H. 1935, § 3563) from reversing any finding depending upon the credibility of witnesses or the weight of evidence.

The only uncontradicted evidence militating against the admissibility in evidence of the statements made by Miss Nozawa is that the person taking Miss Nozawa's statements was a detective and hence one in authority and the admissions by the police that they exhorted Miss Nozawa to tell the truth and that they had heard there were bedbugs in the women's cell block. That a statement of a person suspected of crime was taken by one in authority does not *per se* militate against its admission.[6] Mere exhortation or adjuration to speak the truth does not render a confession incompetent.[7] The evidence in relation to bedbugs is confusing. Whether the court believed Miss Nozawa's testimony that there were bedbugs in her cell and that they contributed to her discomfort we are not in a position to say. But assuming that she spoke the truth it does not appear that their presence was the result of purpose or design. The cells in the police station are merely for temporary detention and if bedbugs were present it is as reasonable to believe that they were brought in by temporary occupants as that their presence was habitual. The cell that Miss Nozawa occupied was no different generally in respect to furniture or fixtures from any other cell in the women's cell block. No discrimination was made in her assignment to the cell which she occupied. Nothing else appearing, the subject may be dismissed without further discussion and the findings of the trial court are accepted without reservation.

There remains for consideration the question of the legal effect of Miss Nozawa's arrest without warrant and

---

6 16 C. J., Crim. Law § 1477, n. 90, p. 721.

7 Ter. Haw. v. Matsumoto, 16 Haw. 267, 269.

for examination under the provisions of Revised Laws of Hawaii 1935, section 5404, quoted in the margin.[8]

The public prosecutor urges that although specified as error in the brief of the plaintiffs in error, pursuant to the provisions of rule 3, paragraph 1 (d) of the rules of this court, the constitutionality of section 5404, *supra*, is not assigned as error in plaintiffs' in error assignments of error, and that the question of the constitutionality of section 5404, is raised for the first time in this court. This may be true. Plaintiffs in error, however, did assign, in their assignment of errors, error in the admission by the trial court of the incriminating statements made by the defendant Nozawa upon the ground that they were not voluntary. And while ordinarily this court will not review upon writ of error a ground of objection neither urged in the trial court nor specifically assigned as error in this court, the legality of the arrest of the defendant Nozawa is so intimately involved in the determination of the voluntary character of the statements made by her that this court will *sua sponte*, if necessary to that end, consider the objection of unconstitutionality now urged in the specifications of error as if urged in the trial court and properly assigned as error in this court.

Plaintiffs in error contend that Miss Nozawa's arrest was illegal upon the grounds (1) that the provisions of section 5404 are contrary to the unreasonable search and seizure inhibition of the Fourth Amendment of the Constitution of the United States and the self-incriminatory and due-process clauses of the Fifth Amendment of the

---

8 "By policeman without warrant. Policemen, or other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed; may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense."

Constitution; (2) that the provisions of section 5404 deny to defendants the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States; (3) that the detention of Miss Nozawa became illegal due to the delay of those in authority in entering a charge against her and bringing her forthwith before the committing authority; (4) that section 5404 and its companion statute, section 5408, are void for uncertainty, indefiniteness and vagueness; (5) that the provisions of section 5404 furnished no ascertainable standard of due cause for the imprisonment for examination of a suspect. We do not deem it necessary, however, to pass upon the constitutionality of the statute. Assuming *arguendo* that no statutory authority existed for Miss Nozawa's arrest without a warrant other than section 5404 and that the alleged grounds of unconstitutionality, with the exception of that identified as ground (3) are well-taken, and that the statements attributed to her were taken while she was illegally detained by and in the custody of the police, we are of the opinion that the assumed illegality of the detention does not render her statements involuntary *per se* but, on the contrary, is merely a circumstance to be taken into consideration with all the other facts and circumstances of the case. A confession otherwise shown to have been voluntary is not rendered inadmissible by the fact that its author was under arrest or in custody at the time, even though the arrest or custody may have been under invalid process or without any process or legal right.[9] It is undisputed that an abortion was performed upon Gladys Tai Yee from the effects of which she died on September 26, 1942; that on September 25, 1942, and thereafter and including September 26, 1942,

---

[9] People v. Vinci, 295 Ill. 419, 129 N. E. 193, 195; State v. Raftery, 252 Mo. 72, 158 S. W. 585, 587; Balbo v. The People, 80 N. Y. 484, 498; 2 Wharton, Criminal Evidence § 610, p. 1023.

the defendant Peter L. Young was a duly licensed physician practicing his profession in Honolulu with offices at North Vineyard and River Streets; that during all of said time Miss Nozawa was employed as a nurse in the office of Dr. Young and assisted the doctor in the treatment of office patients; that the deceased, Gladys Tai Yee, consulted Dr. Young at the latter's office September 25, 1942, and her presence in the office was known to the defendant Nozawa; that the relation of physician and patient existed between Dr. Young and the deceased, Gladys Tai Yee, at the time of her visit to the office of Dr. Young on September 25, and that such relation continued until the time of her death; that prior to taking her statements the police had interviewed all persons likely to possess any knowledge of the facts, including the husband of the deceased, the mother of the deceased, and the autopsy surgeon, the evidence of whom upon the trial made out a *prima facie* case against Dr. Young; that none of these persons had any knowledge of the means employed in the performance of the abortion upon the deceased; that the deceased had made no statement prior to her death and Dr. Young, upon the advice of counsel, refused to talk. Hence, on September 28, 1942, upon the facts then known to the police, there was probable cause to believe that Dr. Young had committed an abortion upon the deceased, Gladys Tai Yee, and that Miss Nozawa, as assistant in his office, was implicated in the abortion. In addition to being a necessary and material witness she was a suspect. If the provisions of section 5404 are constitutional they provide ample justification for her arrest forthwith for examination.

Miss Nozawa came to the police station voluntarily on the evening of September 28 at the invitation of the police. She was brought from her home in Manoa to the police station in a car driven by the police detective, who subsequently interrogated her and took her statements. While

en route to the police station she denied acquaintance with the deceased, denied all knowledge of any professional relation existing between the deceased and Dr. Young. She persisted in that lack of acquaintance and knowledge upon her arrival at the police station. At about 8 o'clock upon the evening of September 28 she was booked for examination and assigned to a cell in the women's cell block, where she spent the night. Assuming that upon and after 8 o'clock p. m. on September 28, 1942, and thereafter on September 29, 1942, and at the time her statements were taken, her detention was illegal by reason of her arrest without a warrant as required by Revised Laws of Hawaii 1935, section 5400, we do not believe that such illegality, with all the other facts and circumstances of the case, rendered her statements involuntary. Her arrest, if illegal upon the ground of unconstitutionality of the statute pursuant to which she was arrested, had no effect upon the actions of the police nor upon her reactions to their treatment. Sufficient reasons appear to have justified her detention on the evening of September 28 and the postponement of further interrogatories until the following day. No implications of duress or coercion arise from mere illegality of arrest. The trial court held upon the facts that the statements were voluntarily made. The additional element of illegality of arrest and detention does not change the result.

The complaint that no charge was entered against Miss Nozawa and that she was not taken before a committing authority could only apply to the situation as it existed after the conclusion of the first statement, a period of approximately 12 hours. At that time her incriminatory admissions, together with the information at hand constituted probable cause to believe that she took part in the criminal abortion performed by Dr. Young upon the deceased, Gladys Tai Yee. But the failure to secure a war-

rant for her arrest and to take her before the committing authority and her detention for the short period after the taking of the first statement and until her discharge at 11 o'clock on the evening of September 29, 1942, is insufficient to operate retroactively and render her first statement involuntary. During the time which elapsed prior to her charge she was occupied with the police in a search of the doctor's office for instruments and drugs to which she had referred in her statement. The luncheon hour intervened and she was taken to lunch. The reason assigned for the taking of the second statement has not been challenged and no doubt other police routine required her detention until a late hour. The case in *Mitchell* v. *United States* reported in 322 U. S. 65, hereinafter referred to, is sufficient authority upon which to conclude that her detention by the police after the first statement did not operate to render the first statement inadmissible. The same reasoning applies to the second statement.

Plaintiffs in error rely for reversal upon the authority of *McNabb* v. *United States*, 318 U. S. 332 and *Anderson* v. *United States*, 318 U. S. 350. In both of those cases the defendants had been convicted in federal courts for offenses against the laws of the United States. *Certiorari* was granted in each case to review the admissibility in evidence of confessions or incriminating statements made by defendants while in the custody of the police for an unreasonable length of time and in disregard of arraignment statutes requiring their prompt arraignment before the committing authority. In the *McNabb* case the defendants had been arrested by officers of the bureau of internal revenue upon suspicion of having murdered an officer of the agency while engaged in the performance of his official duties. Instead of taking the accused before a United States commissioner or nearest judicial officer having jurisdiction under existing laws for a hearing, com-

mitment or taking bail for trial as required by statute, the arresting officers imprisoned the accused and held them incommunicado several days, during which time they were subjected to protracted and unremitting questioning, resulting in their confessing to the murder. In the *Anderson* case the defendants had been arrested without warrant by state officers upon suspicion of having conspired to dynamite power lines of the Tennessee Valley Authority, a corporation of which the United States was a stockholder and which constituted a federal offense. The accused were not taken before any magistrate or other committing officer as required by the laws of Tennessee and, after being detained in the custody of the arresting officers incommunicado for a period of about six days, made incriminating statements. A charge and arraignment before a committing magistrate followed. Under the laws of Tennessee an officer was authorized to arrest without a warrant when a felony had in fact been committed and he had reasonable grounds for believing that the person arrested had committed it. But willful destruction of power lines under the laws of Tennessee was only a misdemeanor. The Government conceded that the detention of the accused by state officers was in violation of the state statute. The *McNabb* and *Anderson* cases were argued at the same time in the United States Supreme Court and are governed by the same considerations. The thesis of the opinion in the *McNabb* case sufficed for both. The court held that even if voluntarily made, the confessions or incriminating statements were inadmissible. The rationale of the *McNabb* opinion is expressed in the following language of the court:

"Quite apart from the Constitution, therefore, we are constrained to hold that the evidence elicited from the petitioners in the circumstances disclosed here must be excluded. For in their treatment of the petitioners the

arresting officers assumed functions which Congress has explicitly denied them. They subjected the accused to the pressures of a procedure which is wholly incompatible with the vital but very restricted duties of the investigating and arresting officers of the Government and which tends to undermine the integrity of the criminal proceeding. Congress has explicitly commanded that 'It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial . . .' (pp. 341-342) * * *

"The circumstances in which the statements admitted in evidence against the petitioners were secured reveal a plain disregard of the duty enjoined by Congress upon federal law officers. Freeman and Raymond McNabb were arrested in the middle of the night at their home. Instead of being brought before a United States commissioner or a judicial officer, as the law requires, in order to determine the sufficiency of the justification for their detention, they were put in a barren cell and kept there for fourteen hours. For two days they were subjected to unremitting questioning by numerous officers. Benjamin's confession was secured by detaining him unlawfully and questioning him continuously for five or six hours. The McNabbs had to submit to all this without the aid of friends or the benefit of counsel. The record leaves no room for doubt that the questioning of the petitioners took place while they were in the custody of the arresting officers and before any order of commitment was made. Plainly, a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in willful disobedience of law. Congress has

not explicitly forbidden the use of evidence so procured. But to permit such evidence to be made the basis of a conviction in the federal courts would stultify the policy which Congress has enacted into law." (pp. 344-345)

The opinion in the *McNabb* case was later reviewed by the Supreme Court of the United States in the case of *Mitchell* v. *United States, supra,* and expressly approved. But although in the *Mitchell* case the defendant had been detained in the custody of the arresting officer eight days before arraignment, a confession made by him upon the day of his arrest was held to be voluntary and admissible in evidence against him, thus limiting the application of the *McNabb* case and distinguishing between a confession, the product of duress and coercion persisted in for an unreasonable period of time and in disregard of the express command of the arraignment statute, and a spontaneous voluntary confession made before the unlawful detention began. In our opinion, the *McNabb* and *Anderson* cases are inapplicable to the instant case. In neither the *McNabb* case nor the *Anderson* case does it appear that the arrests were illegal. It was the detention of the accused for an unreasonable length of time, in disregard of the arraignment statute after a lawful arrest, that operated retroactively to render the confessions involuntary *per se.* In the instant case the legal effect of the assumption of illegality of arrest alone is involved. The detention of the author of the incriminating statements was neither for an unreasonable length of time nor contrary to any arraignment statute locally applicable except as it might be said that she was arrested without warrant, prohibited by the provisions of Revised Laws of Hawaii 1935, section 5400. Further, the *McNabb* case, construed in the light of the opinion in the *Mitchell* case, applies only where the detention is in violation of an arraignment statute and is of such unreasonable duration as to give rise to a con-

clusive presumption of duress or coercion.   In the *Mitchell* case the effect of the illegal detention, although in violation of the arraignment statute, was not considered *per se* coercive but, on the contrary, merely an element to be considered with all the other facts and circumstances surrounding the alleged confession in determining whether the confession was freely and voluntarily made.

2. Next, the specification of error involving the denial of the motion of the defendant Young to suppress certain evidence.   Plaintiffs in error contend that "in place of holding a preliminary hearing at the time or even later the court ruled that the motion to suppress should remain in abeyance and permitted the seized articles objected to in the motion to be put in evidence and left the question of the validity of the search to the jury" and that the evidence at best merely shows an "assent" to the search for and seizure of the articles sought to be suppressed and not "consent" operating as a waiver of the constitutional security guaranteed by the Fourth Amendment.   The admission in evidence of the articles subject to the motion to suppress has not been assigned as error.

The abeyance of the motion was with the express approval and consent of the defendant.   If error, it was invited and will not be considered.   Whether the court was correct in committing the issue of waiver by the defendant Young of his constitutional right to the ultimate determination of the jury is unnecessary to decide.   If not, its action in that regard was more favorable to the defendants than that to which they were entitled and, if error, one of which they cannot complain.

It is true that the search and seizure by which the articles were secured by the police was not made pursuant to a search warrant but the presence of the police in the office of the defendant Young on September 28, 1942, and at the time the articles sought to be suppressed were se-

cured, was at the invitation of the defendant Young. The officers who secured the articles testified that they requested of Dr. Young that they be permitted to take them and retain them in their custody and Dr. Young, their owner, gave his approval. This was not denied. The undisputed evidence in the case sustains a finding that the defendant Young freely and voluntarily and unequivocally consented to the taking and retention by the police of the articles sought to be suppressed. Apparently the trial judge so found and concluded, as a matter of law, that such consent operated as a waiver of the constitutional freedom from search and seizure. We see no reason to disturb the findings of fact of the trial court or his conclusion upon the legal effect thereof. Under the circumstances the motion to suppress was properly denied.

3. Finally, the specification of error involving the propriety of charging the death of a woman resulting from a criminal abortion as murder in the second degree.

Murder is defined by statute as "* * * the killing of any human being with malice aforethought, without authority, justification or extenuation by law, and is of two degrees, the first and second, which shall be found by the jury." (R. L. H. 1935, § 5990.)

"Murder committed with deliberate premeditated malice aforethought, or in the commission of or attempt to commit any crime punishable with death, or committed with extreme atrocity or cruelty, is murder in the first degree.

"Murder not appearing to be in the first degree is murder in the second degree." (R. L. H. 1935, § 5992.)

Manslaughter is defined as the killing of "* * * a human being without malice aforethought, and without authority, justification or extenuation by law * * *."

Murder in the first degree is to be distinguished from murder in the second degree by the absence from the latter

offense of the elements of deliberation and premeditation. Malice aforethought is a criminal element common to both degrees of murder. Manslaughter is distinguished from murder by the absence of malice aforethought.

It is conceivable that a homicide resulting from a criminal abortion might be intentional, in which event the offense unquestionably would be murder. The indictment in effect does not allege that there was any design to kill but merely the commission of the subordinate offense of abortion from which death ensued. And hence we assume that the homicide was unintentional. But a homicide, the result of a criminal abortion, though unintended, constitutes murder, the element of malice included in the crime of abortion, which is a felony, supplying by implication the malice aforethought necessary to constitute the crime of murder.

Very early in the judicial history of Hawaii the question of the criminal liability of a person who while doing or attempting to do an unlawful act undesignedly kills another came before the then chief justice of this court, sitting *nisi* in the case of *The King* v. *Bush*, reported in 1 Haw. 62. The chief justice charged the jury in that case as follows: "If a person while doing or attempting to do an unlawful act, undesignedly kills another, he is guilty of murder or manslaughter, according to the nature of such act. If the act is felonious, that is, one which is highly criminal, the killing resulting from it is murder. If simply unlawful, and without any deliberate and malicious intention, it is manslaughter." This is unquestionably a correct statement of the law. It was the rule at common law and while it has its limitations it is applicable to the case of a woman dying as a result of a criminal abortion performed upon her.

Abortion is a statutory offense.[10] An element of the

---

10 R. L. H. 1935, § 6232.

offense is malice. Malice is defined by statute.[11] The statutory definition applies equally to both murder and abortion. While the punishment for abortion is graduated accordingly as the woman aborted be or be not quick with child, punishment in either case may be by imprisonment at hard labor in excess of one year, making the crime of abortion, whatever the punishment, a felony.[12] Under the circumstances the rule enunciated in the *Bush* case is clearly applicable. Malice may be either express or implied. Where the death of the mother ensues as a result of a criminal abortion the malicious intent to commit the crime of abortion is by "implication of law transferred from such offense to the homicide which was actually committed so as to make the latter offense a killing with malice aforethought."[13]

No useful purpose would be served in analyzing and distinguishing the cases cited by plaintiffs in error in support of their contention that homicide as the result of a criminal abortion constitutes manslaughter and not murder. Some of them involve express statutes defining the offense as manslaughter or depend for their rationale on the degree of criminality of the subordinate offense of abortion and the application of the rule that if the subordinate offense of abortion is a misdemeanor the offense constitutes manslaughter and not murder. No case has been called to our attention and personal research has developed none contrary to our conclusions.

Judgment affirmed.

*F. Patterson* and *E. J. Botts* for plaintiff in error.

*W. Z. Fairbanks*, Public Prosecutor, and *J. E. Parks*, Assistant Public Prosecutor, for defendant in error.

---

[11] R. L. H. 1935, § 5302.

[12] R. L. H. 1935, § 5301.

[13] The People v. Enoch, 13 Wend. 159 (N. Y.); see also Worthington v. State, 92 Md. 222, 48 Atl. 355; State v. Smith, 33 Me. 48; State v. Lodge, 14 Del. 452, 33 Atl. 312.