TERRITORY OF HAWAII *v.* MIKE LEGASPI, TA-
MOTSU NAKASONE, JAMES KIYOSHI ONOE,
ALSO KNOWN AS ALEXANDER SUMIDA, AND
ROBERT MORIYOSHI KIYABU.

NO. 2807.

ARGUED JUNE 10, 1952.     DECIDED JANUARY 29, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

The plaintiffs in error were indicted for gross cheat
and for conspiracy to commit gross cheat. (R. L. H. 1945,
§§ 11360, 11120.) All were convicted upon the second
count only.

Evidence introduced at trial in support of the allega-
tions of the indictment established that Legaspi visited
the shop of one Takeo Honda in Honolulu and inquired
of the price of monuments stating that he proposed pur-
chasing one for erection upon the grave of his father
located in the Waipahu cemetery. Honda testified in part:

"Mr. Legaspi stated that tomorrow morning a Japanese boy will come for him, so will you please come to Waipahu and make an estimate at the cemetery * * *." From this point forward the record bears no further evidence introduced by the Territory concerning Legaspi's participation in the scheme to commit gross cheat upon Honda, other than that on several occasions prior to Honda's reporting his loss to the police he was seen in company with Nakasone, and the further fact that Kiyabu was present at the time of Legaspi's arrest at a rooming house in Honolulu. Legaspi, as a witness in his own behalf, admitted negotiating with Honda at his shop on the day in question for purchase of a monument for his brother's grave on Kauai, not that of his father at Waipahu; and also established that he was on the island of Kauai at the time Honda was swindled. This latter fact was not controverted. The record bears no evidence of the degree of acquaintanceship between Legaspi and plaintiffs in error Nakasone and Kiyabu; nor does it establish any acquaintanceship whatsoever between Legaspi and plaintiff in error Onoe.

Nakasone called at Honda's shop the following morning and offered to transport him to the Waipahu cemetery. Honda testified that upon arrival: "They finally came to a plot of land and Mr. Nakasone said, 'This must be it—probably be it'." While Honda was examining the plot, Onoe arrived and engaged Nakasone in conversation concerning a ride to Honolulu. Honda testified: "Mr. Sumida [Onoe] then came and pointed at a tomb and said, 'This is Mr. Legaspi's father's tomb'." The inscription was illegible. Because of the uncertainty of identification Honda then requested Nakasone to advise Legaspi to call at his shop the following morning to positively identify the grave and its location. The record bears no further evidence aliunde the conversation as to whether Legaspi's

father's grave was in fact in the Waipahu cemetery, nor was that fact established or controverted at trial.

As they were driving back to Honolulu, Nakasone stopped the car in the vicinity of Hickam Field stating that he had observed a friend standing on the highway and desired to offer him a ride. Kiyabu entered the rear seat of the car carrying a suitcase, and stated that he had just returned from Japan. It was not established other than as above recited, whether Kiyabu and Nakasone were in fact prior acquaintances. Kiyabu then asked Nakasone for a loan. Nakasone stated that he had no money. Kiyabu then asked Onoe for a loan. Onoe agreed and executed a check for $300 on the Bank of Hawaii at Honolulu payable to Kiyabu. Kiyabu, on accepting the check, removed a box containing stones resembling cut diamonds from his suitcase and handing one of them to Nakasone remarked: "During the four and one half years that I was in Japan, I spent practically all of my money on these diamonds; so I don't have any right now."

Kiyabu left the group at the Bank of Hawaii in Honolulu stating that he was going to cash Onoe's check. Onoe got out at Bishop street to locate a jeweler to appraise the stone which they had examined in the car. Nakasone and Honda met Onoe on Merchant street later the same morning, Onoe advising them that he had located the jeweler. They then drove mauka on Emma street to meet the jeweler, parked the car, and an individual who was not identified at trial, entered the car carrying a suitcase. He examined a cut stone which Nakasone handed him, stated it was worth $1800, and offered to purchase it for that amount. Nakasone promptly accepted the offer and was paid $1800 in cash. Onoe then opened Kiyabu's suitcase and displayed the remaining stones to the jeweler who, after a cursory examination offered to purchase the entire lot for $150,000. The jeweler then departed, and

Nakasone, Onoe and Honda drove to Merchant street where they met Kiyabu who presumably had just returned from the Bank of Hawaii. Onoe then commenced urging Kiyabu to sell him all of the diamonds, and Kiyabu, after some deceptive and artful persuasion, agreed to sell the remaining diamonds to Onoe for $40,000. The group then drove to the Pleasanton Hotel where Kiyabu left them. Nakasone and Onoe then suggested that Honda join them in purchasing the diamonds from Kiyabu for $40,000 so that they—Nakasone, Onoe and Honda—could resell the stones to the jeweler at a profit of $110,000. Following more timely and ingenious persuasion they prevailed upon Honda to join them in contributing a share toward the purchase price of the stones from Kiyabu.

The indictment charged that by means of the pre-arranged series of events above recited, Honda was ultimately swindled of his contribution of $22,400, most of which he had secured from members of his family and friends and by negotiating a mortgage upon his home. At trial it was established that Kiyabu's cut stones were in fact white zircons worth $2.50 per carat.

Fourteen errors are assigned. Seven are relied upon, the remainder being abandoned except in so far as they relate to assignment of error number 1.

It is contended that the trial court erred in refusing defendant Legaspi's requested instruction number 2:

"I instruct you, gentlemen of the jury, to find the defendant Mike Legaspi not guilty." It is urged that there was no evidence amounting to more than a scintilla from which the jury could find defendant Mike Legaspi guilty.

Bound as we are by the record before us, we find it grossly wanting in evidence, direct or circumstantial, bearing upon plaintiff in error Legaspi's guilt of the offense of conspiracy to commit gross cheat as laid in the second count of the indictment; so wanting in fact that

its nature and details have been enumerated in full, *supra*.

This court will not disturb the verdict of a jury if there is more than a scintilla of evidence to support their finding. (*Rep. Haw.* v. *Yamane,* 12 Haw. 189; *Territory* v. *Chung Nung,* 21 Haw. 214; *Ter.* v. *Lam Bo,* 23 Haw. 718; *Territory* v. *Ebarra et als.,* 39 Haw. 488.) That evidence, however, to sustain such finding must amount to more than a mere trifle or suspicion of guilt of the offense charged. It must be of a substantial nature amounting not to a scintilla, but to *more* than a scintilla when considered with other material evidence. As a measure of quantum, a scintilla has been defined as: "the least particle of evidence —evidence which, without further evidence, is a mere trifle." (*Holstein* v. *Benedict,* 22 Haw. 441, 445.)

Rarely in a trial involving charges of the nature of the instant indictment are the elements of a conspiracy, and ofttimes of participation, established by direct evidence. And where as here, presumably of necessity, proof of the agreement and concert of participation is attempted to be shown by the acts of the defendants and by other circumstances amounting to no more than suspicion and conjecture, that evidence must under settled principles yield to the requisite of logical and legitimate deductions warranting a reasonable inference of guilt. "The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury; otherwise not, for, short of this, the judge should direct a nonsuit or an acquittal in a criminal prosecution. * * * But, if the evidence warrant a reasonable inference of the fact in issue, it is for the jury to say whether they are convinced beyond a reasonable doubt of such fact, the fact of guilt." (*Ter.* v. *Hart,* 35 Haw. 582, 590.) Applying that

rule, we find that the limited evidence of Legaspi's participation neither tends to prove his guilt, nor, in our opinion does it reasonably conduce to a conclusion of guilt as a fairly logical and legitimate deduction. On the contrary, it warranted the granting of plantiff in error Legaspi's requested instruction number 2.

The elements required to be proved under count two were a malicious or fraudulent combination or mutual undertaking or concerting together of the defendants to commit gross cheat in an amount exceeding $100. Weighing the Territory's evidence as to Legaspi in its most favorable light, it constitutes in our opinion nothing more than bare suspicion that he was, by the bonds of association, an acquaintance of two of the other four members of the conspiracy alleged in count two. That Legaspi visited Honda at his shop, that he was seen in company with Nakasone before Honda reported the swindle to the police, and that at the time of arrest he was with Kiyabu, fails in our opinion to support a reasonable inference of either direct or circumstantial confederation or participation. Upon that evidence—the sole evidence of record in support of the second count of the indictment—we are constrained to disagree with the trial judge in concluding that it constituted sufficient evidence warranting the issue of Legaspi's guilt being submitted to the jury. It fails to constitute *more* than a scintilla. (*Ter.* v. *Lam Bo, supra; Rep. Haw.* v. *Yamane, supra; Territory* v. *Chung Nung, supra; Territory* v. *Ebarra et als., supra.*) The refusal in requested instruction number 2 constituted error. (*Mooneyham* v. *State,* 28 Ala. App. 228, 182 So. 78; *State* v. *Labbit,* 117 Mont. 26, 156 P. [2d] 163; *State* v. *Lizotte,* 109 Vt. 378, 197 Atl. 396.)

Plaintiffs in error contend that the refusal to grant requested instruction number 1 was error. It reads: "I

instruct you, gentlemen of the jury, to find the defendants not guilty." With the exception of plaintiff in error Legaspi and the defendant John Allen London, who was not on trial, we find ample evidence warranting the finding of the jury as to the remaining defendants. Honda testified that in Onoe's and Kiyabu's presence he produced $7,400 to which sum Onoe added $7,800 giving the $15,200 to Kiyabu as the down payment; and that a week later he also handed an additional $15,000 in cash to Kiyabu in Nakasone's presence. Honda testified in detail upon the various sources from which he had secured the sum of $22,400.

There was ample testimony adduced — sufficient of which is recited above—to establish Nakasone, Onoe and Kiyabu as coconspirators of a scheme to swindle the $22,400 from Honda, and which further established that their separate acts in pursuance thereof constituted a conspiracy in law. (R. L. H., § 11123; see also *The King* v. *Anderson and Russell,* 1 Haw. 67, 68; *Territory* v. *Goto,* 27 Haw. 65, 67.) That evidence, as contradistinguished from the limited and inadequate testimony pertaining to plaintiff in error Legaspi, constituted substantial evidence both direct and circumstantial to enable the jury to fairly deduct a reasonable factual inference that the defendants other than Legaspi were in fact participants in the conspiracy alleged in the second count. Suffice to say that its execution was accomplished with timely and successful precision—with Onoe, Kiyabu and Nakasone executing the major roles, their several acts merging by reasonable imputation into a chartered scheme to swindle Honda of the sum of $22,400.

Plaintiffs in error contend that the trial court erred in refusing requested instruction number 6 upon the subject of reasonable doubt in that the instruction given failed to state that a reasonable doubt may also arise from a "lack of evidence," and that the defendants were entitled to have

the jury instructed what constituted a reasonable doubt as well as what a reasonable doubt was not.

This court recently decided the precise question in *Territory* v. *Martin,* 39 Haw. 100. The assignment is without merit.

Plaintiffs in error contend that the trial court erred in refusing requested instruction number 7 upon the credibility of witnesses. We find that an adequate instruction was given upon the law applicable.

"The court further instructs you, Gentlemen of the Jury, that you are the exclusive judges of the credibility of the witnesses, of the weight of the evidence, and of the facts in this case. It is your exclusive right to determine from the appearance of a witness on the witness stand, his manner of testifying, his apparent candor or frankness, or lack thereof, which witness is more worthy of credit, and to give weight accordingly. In determining the weight to be given the testimony of a witness you are authorized to consider his interest, if any, in the result of this case, his temper, feeling or bias, if any has been shown, his demeanor on the witness stand, his means and opportunity of information, and the probability or improbability of the story told by him.

"If you find and believe from the evidence that any witness in this case has knowingly and wilfully sworn falsely to any material fact in this trial or that any witness has knowingly and wilfully exaggerated or suppressed any material fact or circumstance in this trial for the purpose of deceiving, misleading or imposing upon you, then you have a right to reject the entire testimony of such witness except insofar as the same is corroborated by other credible evidence or believed by you to be true." (Territory's instruction number 6, given by agreement.)

This court also approved such an instruction in *Ter-*

*ritory* v. *Martin, supra.* The assignment is without merit.

Plaintiffs in error contend that the trial court erred in refusing requested instruction number 8: "The fact that Takeo Honda, prior to the commencement of this prosecution, brought a civil action against the defendants to recover the money referred to in the indictment may be considered by you in determining his credibility." Where a jury is instructed that as to all witnesses, their interest or lack thereof can be considered as affecting their credibility, it is not error to refuse an additional instruction specifically directing the jury's attention to the interest of a *particular* witness when that same test is applicable to *all* witnesses. (*United States* v. *Buck,* 23 F. Supp. 503; *Underwood* v. *State,* 239 Ala. 29, 193 So. 155; *Copeland* v. *State,* 27 Ala. App. 405, 173 So. 407; *People* v. *Zirbes,* 6 Cal. [2d] 425, 57 P. [2d] 1319; *Wymer* v. *People,* 114 Colo. 43, 160 P. [2d] 987; *Barkley* v. *State,* 152 Fla. 147, 10 So. [2d] 922; *People* v. *McCrea,* 303 Mich. 213, 6 N. W. [2d] 489, *cert. denied; McCrea* v. *People of State of Michigan,* 318 U. S. 783, 63 S. Ct. 851, 87 L. Ed. 1150; *Ter.* v. *Marks,* 25 Haw. 219; *Ter.* v. *Martins,* 28 Haw. 187; *Ter.* v. *Leong Kun,* 29 Haw. 90.)

The assignment is without merit.

Plaintiffs in error contend that the trial judge erred in giving Territory's instruction number 2 which reads in part: "A conspiracy is a malicious or fraudulent combination or mutual undertaking or concerting together of two or more, to commit any offense or instigate any one thereto, or charge anyone therewith; or to do what plainly and directly tends to excite or occasion offense, or what is obviously and directly wrongfully injurious to another." Section 11120 of the Revised Laws of Hawaii 1945, defines the offense of conspiracy and the instruction is verbatim the wording of that section. An instruction given in the wording of the statute is sufficient as recently held in

*Territory* v. *Joaquin*, 39 Haw. 221, and authorities cited therein.

Plaintiffs in error contend that the giving of Territory's instruction number 8 constituted error. Specifically that the portion thereof: "all who take part in a conspiracy after it is formed and while it is in execution * * * are fellow-conspirators." It is contended that the foregoing excerpt would be held by the jury to include: "one who, however innocent his acts might otherwise be, takes a part, however small, in the acts which constitute a conspiracy thereby is guilty, even though he had no knowledge of the existence of a conspiracy."

The instruction as given reads: "I further instruct you, as a matter of law, that all who take part in a conspiracy after it is formed and while it is in execution, and all who, with knowledge of the facts, concur in the plans originally formed and aid in executing them, are fellow-conspirators. Their concurrence, without proof of an agreement to concur, is conclusive against them. They commit the offense when they become parties to the transaction or when they further the original plan."

Other related instructions also adequately stated and elaborated upon that principle of law. Defendants' instruction number 18 reads in part: "* * * The second element [of a conspiracy] is that there must be an agreement, combination or confederation mutual undertaking or concerting together with a common design. Mere passive cognizance of the crime or unlawful act to be committed or mere negative acquiesence is not sufficient. The third essential [of a conspiracy] is the existence of an unlawful purpose * * *." Territory's instruction number 9, as modified reads in part: "I further instruct you that the evidence in proof of a conspiracy will, in general, be circumstantial and although the common design or plan in the minds of the alleged conspirators is a necessary element in the

crime charged, it is not necessary to prove that the defendants came together and actually agreed, in terms, to have that design or plan and to follow it together * * *."

The assignment is without merit.

Judgments as to plaintiffs in error Tamotsu Nakasone, James Kiyoshi Onoe, and Robert Moriyoshi Kiyabu, affirmed.

Judgment as to Mike Legaspi reversed.

*O. P. Soares* (also on the briefs) for plaintiffs in error.

*G. F. St. Sure,* Assistant Public Prosecutor (also on the brief), for defendant in error.

