No. 17,506.

LeRoy Adolph Leick *v.* People of the State of Colorado.

(281 P. [2d] 806)

Decided March 31, 1955.   Rehearing denied April 6, 1955.

Mr. J. GLENN DONALDSON, Mr. WILLIAM R. LOEFFLER, for plaintiff in error.

. Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy Attorney General, Mr. NORMAN H. COMSTOCK, Assistant Attorney General, Mr. MAX D. MELVILLE, Special Assistant Attorney General, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will herein refer to plaintiff in error as defendant, or by name.

An information was filed in the district court of the City and County of Denver against defendant and one Gene Dukes, in which said defendants were charged with the crime of murder. Separate trials were ordered for each defendant. Defendant Leick entered pleas of not

guilty, and not guilty by reason of insanity at the time of the alleged commission of the crime, and was committed to the psychopathic ward of Colorado General Hospital for observation pursuant to the provisions of C.R.S. '53, 39-8-2. He was tried on the issue raised by his plea of not guilty. The trial court in proceeding to trial upon these issues, was apparently attempting to follow. the. provisions of C.R.S. '53, 39-8-3, which are as follows:

"When a defendant pleads not guilty by reason of insanity at the time of the alleged commission of the crime, and joins with it another plea or pleas not involving insanity, including the plea of not guilty, he shall first be tried as if he had entered such other plea or pleas only, and on such trial he shall be conclusively presumed to have been sane at the time the alleged offense was committed.

"If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity at the time of the alleged commission of the crime, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury, in the discretion of the court."

Defendant was found guilty and the jury fixed the penalty to be imposed on him at death. The verdict was returned March 6, 1954, and thereupon the jury was permitted to separate with directions to reassemble March 8, for the purpose of determining the issues raised by defendant's plea of not guilty by reason of insanity at the time of the alleged commission of the crime. This second trial resulted in the following verdict: "We the jury find the defendant Leroy Adolph Leick was legally sane at the time of the alleged commission of the crime."

Motion for a new trial was filed in due course, and, upon hearing, was overruled and defendant was sentenced to death. Seeking review of the judgment and sentence, he brings the case to this Court by writ of error.

Numerous assignments of error are urged by counsel for defendant as grounds for reversal of the judgment. We find it unnecessary to mention or discuss all of them, and in this opinion we will consider only the following:

(1) The contention advanced by counsel for defendant that the statute is unconstitutional which fixes procedures for the trial of criminal cases in which a plea of not guilty by reason of insanity is entered by the defendant.

(2) The contention that error was committed by the trial court in giving Instruction No. 13 to the jury.

(3) The admission of certain testimony over objection of defendant.

In order that defendant's position, concerning the constitutionality of the statute governing pleas of not guilty by reason of insanity, may be understood, we direct attention to the following statutory provisions:

C.R.S. '53, 39-8-1, which includes, inter alia, the following:

"A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged, provided that the court for good cause shown may allow a change of plea at any time before the commencement of trial. A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged."

C.R.S. '53, 39-8-3. Which is hereinabove set forth in full.

C.R.S. '53, 39-8-4, provides, inter alia:

"(1) In such trial on the plea of not guilty by reason of insanity the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed. If the verdict is that the defendant was sane at the time the offense was committed, the judge shall sentence him as provided by law.

"(2) If the verdict is that the defendant was insane

at the time the offense was committed, the judge shall forthwith commit him to the state hospital at Pueblo, or to such other institution as may be designated hereafter by law, there to be confined until given his discharge or a probationary release as hereinafter provided; and the judge shall order that a transcript of all evidence presented at such trial be attached to and become a part of the order of commitment of defendant."

The basic ground urged by counsel for defendant for reversal of the judgment is that, the foregoing statutory provisions violate the due process clauses of the State and Federal Constitutions. At the outset of the trial counsel for defendant objected to a trial upon the issue of the guilt or innocence of his client prior to the disposition of the issue raised by the plea of not guilty by reason of insanity. They raised the question of the constitutionality of the foregoing sections, "* * * generally in respect to the prescribed order of trying the issues of guilt and insanity and specifically

"(1)   because of the *conclusive* presumption therein contained concerning the sanity of defendant at the time the alleged offense was committed; and

"(2)   because of the discretion vested in the court permitting the intermingling of a criminal and civil proceeding and trial before the same jury, all of which we contend is in violation of the due process clauses of both State and Federal Constitutions."

After the verdict of guilty had been returned by the jury in the first trial, and at the outset of the trial upon the issue of insanity, the objections of counsel for defendant were renewed in the following form:

"Defendant renews his previously stated objections to the procedure adopted in this case requiring the trial of this defendant upon the issue of his guilt or innocence prior to the determination of the issue of sanity raised by special plea: that by such procedure, defendant, in the exercise of his right to defend upon the grounds of inability to form the criminal intent because of his men-

tal condition at the time of and prior to the time of the criminal act for which he stands charged, was compelled to submit to a search of his entire life and present prejudicial exposures in support of his claim of inability to form the criminal intent during the trial of the issue, guilt or innocence of the crime charged, to his irreparable injury and prejudice; that such was necessitated and occasioned by the required order of presenting the two separate and incompatible issues in this case involved and could have been avoided if a determination of his sanity had been first had: that Chapter 144, Session Laws of Colorado, 1951, is violative of the Constitutional rights of this defendant for a fair and impartial trial and he is thereunder denied due process of law because of the above and foregoing and for the further reasons, to-wit:

"1) Because of the *conclusive* presumption of sanity provided by said statute during the trial of the issue of guilt or innocence; and

"2) Because of the intermingling of criminal and civil proceedings in one trial; and

"3) Because of the obscure legislative intent contained in said statute, which renders impossible the intelligent and orderly presentation of the issues in this case raised.

"All of which renders said Statutory Act unconstitutional."

These objections were overruled and counsel for defendant then moved that the jury which had returned the verdict of guilty be discharged and a new jury be empanelled to hear the sanity issue. This motion was denied. The trial upon the question of sanity thereupon began and defendant, by his counsel, declined to participate therein and stated his position as follows:

"Defendant, standing upon the objections and motions presented this date, will not exercise his right to cross-examine this witness. We do not waive any rights of the defendant on account thereof.

"Defendant, standing upon the objections and motions

presented this date, offers no testimony and rests, but waives no rights of the defendant by so doing."

Questions to be Determined.

First: *Under the record before us in this cause, was the defendant denied due process of law?*

■■ This question is answered in the negative. We direct attention to the fact that the query is not stated in such a manner as to warrant a declaration that the statute in question is either constitutional or unconstitutional. One who complains that he has been denied due process of law in a criminal case, under procedures authorized by statute, cannot go beyond the events which actually took place, as disclosed by the record on review, in order to defeat the result which obtained upon the trial. An argument, that procedures under a statute deny due process of law, cannot prevail if it consists solely of the contention that, under the statutory procedures in question, some person other than the accused at some time in the future and under different circumstances, may be denied due process of law. When considering the question as to whether procedures conducted under statutory authority were such as to deny due process of law to the accused in a criminal case, we are concerned only with the facts as they actually happened and not with speculations upon what conceivably might have taken place under the authority of the Act.

Attorneys for defendant base their argument, with relation to the constitutional question, upon language appearing in the opinion of this Court in *Ames v. People,* 26 Colo. 83, 56 Pac. 656, as follows: "The test of the constitutionality of a statute is not what has been done, but what, by its authority, may be done under it." This statement was repeated in *People v. Johnson,* 34 Colo. 143, 86 Pac. 233. In the Ames case, supra, there was no question whether a denial of due process of law resulted from the operation of the statute there involved. The action was brought by the state auditor in behalf of the State Board of Equalization to compel a county assessor

to place an assessment of railroad property on the assessment roll of his county, as required by a statute which conferred certain powers with regard thereto on said Board. The county assessor defended his position upon the ground that, in so far as the Act of the legislature purported to authorize the Board to make an assessment of railroad property, it was in conflict with section 8 of Article 14, and other specific provisions, of the Colorado Constitution. As applied to that controversy, measured by the particular constitutional provisions by which the validity of the statute was to be determined, the "test" to be applied was correctly stated in the above quotation from the opinion in that case. Other cases in which the said "test" has been mentioned involved similar situations, in which the validity of an Act delegating power to commissions or home rule cities was the issue to be determined. In constitutional questions of that kind, "The test of the constitutionality of a statute is not what has been done, but what, by its authority, may be done under it." There is a vast difference between a situation of that kind and that presented in a criminal case where it is contended on behalf of the accused that he was denied due process of law because of procedures had under a particular statute.

In *Betts v. Brady*, 316 U.S. 455, the court stated that asserted denial of due process of law, "is to be tested by an appraisal of the totality of facts in a given case." It further was stated in that opinion that due process of law "formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights."

In *Lisenba v. California*, 314 U.S. 219 (236), the court stated, inter alia:

"As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of

must be of such quality as necessarily prevents a fair trial."

From 16 C.J.S., page 1186, we quote as follows:

"Obviously, a reviewing court cannot say that the guaranty of due process has been or is being violated where there is nothing whatever in the record indicating that accused has not received a fair and impartial trial or is being deprived of life or liberty without due process of law."

It probably is true that the statute under consideration affords numerous opportunities to trial judges to commit error, and we are not unmindful of the fact that every case presented to this Court on writ of error, involving procedures under this statute since its adoption, has been reversed for one reason or another. *Martin v. District Court,* 129 Colo. 27, 272 P. (2d) 648; *Bauman v. People,* 130 Colo. 248, 274 P. (2d) 591. The fact that error is likely to be committed by trial courts in their effort to follow a statute does not necessarily mean that the statute should be declared unconstitutional, in the absence of a showing of failure of due process. These considerations bear upon the wisdom of the statute and are within the exclusive province of the legislature.

Counsel for defendant stress the point that, under the statute, defendant was "conclusively presumed" to be sane upon the trial of the issues raised by his plea of not guilty, and that due process of law thereby was denied. The record in this case does not support that statement. The jurors who tried the issues were not informed that any presumption, conclusive or otherwise, was to be indulged by them concerning the sanity of defendant as bearing upon his capacity to premediate and to form the specific intent essential to constitute murder of the first degree; defendant's counsel offered the testimony of expert witnesses, and others, on this point and all of their opinions with regard thereto were received. No evidence offered by defendant bearing upon his mental condition was rejected by the court, and witnesses for both the

people and defendant stated that he either was or was not capable of premeditation and deliberation. These witnesses went further and stated that in their opinions he either was or was not legally insane. No evidence which was offered, and which might properly have been received upon the trial of the issues raised by a plea of not guilty by reason of insanity, was withheld from the jury. Thus due process of law in this connection was not denied defendant.

We have held that a statute which requires a special plea to be entered in cases where insanity is relied on as a defense does not deny due process of law. It further has been held that a separation of the issues for purposes of trial does not deny due process of law. *Ingles v. People,* 92 Colo. 518, 22 P. (2d) 1109. In *Wymer v. People,* 114 Colo. 43, 160 P. (2d) 987, this Court held that it was not error for the trial court to deny a request for a separate trial on the issue of insanity, and no error was committed by the trial court in ordering a trial of all issues to one jury in one trial, even though the statute permitted disposition of the case by separate trials on the issues of not guilty and not guilty by reason of insanity.

We are of the opinion that upon the first trial, conducted under the statute, of issues framed by the plea of not guilty, any evidence bearing on the mental condition of the accused, including evidence of legal insanity, is admissible as bearing on the ability to deliberate and form the intent essential to murder in the first degree. A refusal on the part of a trial court to admit this evidence would be a denial of due process of law for reasons fully discussed in *Ingles v. People, supra.* In that case the question was asked in the following language: "But is he entitled to introduce evidence of insanity, or mental derangement short of insanity, for the purpose, not of an acquittal, but of reducing the grade of the crime from murder of the first degree to murder of the second degree"? This question was answered in the af-

firmative. We make this observation solely for the guidance of courts hereafter in the trial of cases pursuant to this statute. As hereinbefore stated, the trial court in the case at bar did not exclude any competent evidence on this question which was offered by either the people or defendant.

Our attention has been directed to other provisions of the statute which, it is claimed, violate due process of law, namely, that portion of 39-8-1 which reads: "A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged." As indicated by the specially concurring opinion of Mr. Justice Holland in *Bauman v. People, supra,* we doubt the validity of this provision, but since the issue is not presented by the record in this case we comment no further on that question.

Second: *Did the trial court err in giving Instruction No. 13 to the jury?*

This question is answered in the affirmative. The only instruction given by the court which was intended to cope with the troublesome statutory provision under which, on the first trial, defendant was "conclusively presumed" to be sane, was Instruction No. 13, which reads as follows:

"Evidence has been offered and admitted on behalf of both the defendant and the People as to the mental condition of defendant, at the time of the act charged in the information. The question thus presented by this evidence is solely for the purpose of determining his mental ability or inability to form the intention, malice, deliberation and premeditation necessary to murder of the first degree, as that crime is defined in these instructions.

"You are instructed that if you find from all of the evidence beyond a reasonable doubt that defendant did kill Evelyn Leick, as charged in the information, or that Gene Dukes did then and there kill Evelyn Leick, as charged in the information, and that defendant stood by aiding, abetting and assisting as an accessory, as defined

in these instructions, then, and in either event, you must find from such evidence beyond a reasonable doubt that his mental condition permitted the defendant to form the intent, malice, deliberation and premeditation necessary in murder of the first degree, as defined in these instructions; but you may not consider such evidence in any way as bearing on the guilt or innocence of defendant of the charge of murder contained in the information herein."

Whatever the intention may have been, one can scarcely imagine an instruction more contradictory or confusing than the one thus given the jury in the instant case. The first paragraph alone of the instruction leaves much to be desired in the field of clarity, and the last full clause which reads, "but you may not consider such evidence in any way as bearing on the guilt or innocence of defendant of the charge of murder contained in the information herein," is fatally erroneous. By this language the jury was told that it could not consider hundreds of folios of evidence bearing on the mental condition of defendant, and offered by both the people and defendant, "in any way" as bearing on his guilt or innocence, notwithstanding the fact that a very essential and necessary ingredient of the charge of murder contained in the information was the question of his capacity to form the necessary intent and to deliberate the perpetration of the crime. This instruction, on its face, is so at variance with the established procedures in criminal cases as to illustrate the truth of our assertion that the statute in question offers numerous opportunities for trial courts to commit error.

Third: *Did the trial court err in permitting the people on their direct case, to offer evidence on the question of defendant's mental condition?*

This question is answered in the affirmative. We need not consider the law prior to the adoption in 1951 of the statute governing pleas of not guilty by rea-

son of insanity (C.R.S. '53, 39-8), for the reason that the statute itself expressly resolves the issue.

Upon the trial of the instant case a psychiatrist, who observed and examined defendant at great length at the hospital in which he was placed for observation under C.R.S. '53, 39-8-2, was permitted during the presentation of the people's case in chief to testify at great length concerning defendant's mental condition. All this testimony is expressly prohibited by that portion of C.R.S. '53, 39-8-2, which reads in part as follows: "* * * and any evidence obtained from such observation and examination is admissible only on the trial of the issue of insanity, except when offered on the trial of the issue of guilt of a murder charge *to rebut evidence of insanity offered by the defendant to reduce the degree of murder; * * *.*" (Emphasis supplied) This portion of the statute definitely prohibits the presentation of the evidence obtained by experts during the period of observation, until evidence has been brought forward by defendant placing in issue, by testimony, the question of mental capacity. The entry of a plea of not guilty by reason of insanity does not destroy the presumption of sanity with which all persons are clothed. Under the statute above quoted the evidence obtained during the period of observation should not have been received upon the direct case of the people.

It has been unnecessary in the consideration of the case at bar to set forth in this opinion the gruesome and revolting details of the acts which culminated in the charge of murder against defendant. Suffice it to say that if he was sane the penalty of death was fully justified, if such penalty is sanctioned by law; nevertheless such is the nature of our institutions that we must guard against any inclination to by-pass serious error in the trial of a criminal case because of the apparent enormity of the crime. No person should be put to death by order of a group of citizens serving as jurors who were badly misinformed concerning their authority to consider evi-

dence on the main issue of fact for their determination. This is true without regard to the fact that the incidents under investigation may tend to show that the accused is despicable, vicious, or for other reasons an outcast in the eyes of men. Even such a person must be afforded a trial free from error, which might have been the difference between life or death.

The judgment is reversed and the cause remanded for a new trial upon all issues raised by plea.

Mr. Justice Holland and Mr. Justice Clark specially concur.

Mr. Justice Holland specially concurring.

I am in whole-hearted accord with the views and determination of assigned errors as treated in the majority opinion, but I am amazed at the adroitness with which the majority of this Court still eschew the question of constitutionality of statutes that are constantly dogging the trail of murder trials involving the procedure under pleas of insanity. I have expressed myself at length on the question of the constitutionality of these statutes on two former occasions, namely, *Martin v. District Court,* 129 Colo. 27, 272 P. (2d) 648 and *Bauman v. People,* 130 Colo. 248, 274 P. (2d) 591, and see no reason to encumber our reports with a rediscussion thereof; however, since it is stated in the majority opinion, "The probability is true that the statute under consideration affords numerous opportunities to trial judges to commit error, and we are not unmindful of the fact that every case presented to this Court on writ of error involving procedures under this statute since its adoption has been reversed for one reason or another," I think it is our duty, and has heretofore been our duty, to prevent a continuation of errors in these important cases from constantly arising under statutes that are unreasonable and in some respects wholly unconstitutional. I still cling to the statement of the court in earlier cases, "The test

of the constitutionality of a statute is not what has been done, but what, by its authority, may be done under it." I consider it the profound duty of courts to protect the citizens against the operation of unconstitutional statutes, and I do feel that there are exceptions to the rule, that only those affected by a statute can question its constitutionality. When we are confronted with questions that plague the trial court that arise under the statutes here involved, and it is apparent that the statutes are unconstitutional, we should not permit the rights of any citizen to be jeopardized in a trial under such statutes, and it may be in some cases the victim who has been denied due process is not able to perfect an appeal. I refer to my comments in the case of *Bauman v. People, supra,* on the question of both issues being tried in separate trials by the same jury. In my way of thinking, due process involves more than can sometimes be expressed, at least it involves the right to a fair and impartial trial without being entrammelled by statutes that go beyond the question of procedure and reach squarely into the vital elements of liberty and right to a fair trial.

It is to be hoped that before more mischief occurs under these statutes that our Legislature will see fit to wipe these blots from our statutes.

MR. JUSTICE BRADFIELD concurs in this specially concurring opinion.

MR. JUSTICE CLARK specially concurring.

I concur in the foregoing opinion of the Court, but I would add thereto a specific holding that the statutes therein under consideration are not in violation of "due process" nor of any other right assured a defendant in criminal prosecution by any constitutional provisions of this State or of the United States. Notwithstanding my adherence to the belief that the 1951 Act, unless amended, doubtless will lead to confusion and uncertainty in

the trial of criminal cases and result in the commission of numerous and grievous errors in many thereof, yet I am convinced that the order of trial which the legislature has seen fit to prescribe is a matter limited to procedure only and does not involve any basic right under constitutional protection.

I first make reference to a general rule that "Every statute, duly passed, must be declared constitutional unless the contrary appear beyond reasonable doubt." *Watrous v. Golden Chamber of Commerce*, 121 Colo. 521, 547, 218 P. (2d) 498.

The 1951 Act was borrowed from the state of California and is substantially identical with the procedural statutes in that respect of that state. For over twenty years the courts of the jurisdiction of California have labored diligently in an effort to stabilize the procedure under the California statute, the decisions pertaining to which disclose wide diversity of opinion and illustrate the difficulty of administering the Act in the manner proposed by our present legislation. It is a fact, however, that during the course of this extensive litigation in California the constitutionality of the Act has been determined by the Supreme Court of that state and in at least three instances efforts to secure a different interpretation thereof by the United States Supreme Court have proven futile. In the case of *People v. Troche*, 206 Cal. 35, 273 Pac. 767, it would appear that every possible constitutional question was raised in the California court and determined adversely to the defendant. Appeal was taken to the United States Supreme Court and dismissed "for the want of a substantial federal question." 280 U.S. 524, 74 L. Ed. 592, 50 S. Ct. 87. Constitutional questions were again raised in *People v. Coleman*, 20 Cal. (2d) 399, 126 P. (2d) 349, appeal of which to the United States Supreme Court was dismissed "for want of a substantial federal question." citing *Troche v. People, supra*. 317 U.S. 596, 57 L. Ed. 487, 63 S. Ct. 162. In *People v. Wells*, 33 Cal. (2d) 330, 202 P. (2d) 53, practically all of the

previous attacks made against the statute in California were reiterated and again reviewed by the supreme court of that state. Appeal therefrom was attempted to the United States Supreme Court and ceriorari denied. 338 U.S. 836, 94 L. Ed. 510, 70 S. Ct. 43.

In our own jurisdiction the statute in effect immediately preceding the enactment and adoption of the 1951 Act provided that the issue of insanity could be raised in a criminal proceeding only by special affirmative plea. Following attack similar to that made in the instant case, its constitutionality has been confirmed by a number of decisions of this Court. In the case of *Ingles v. People,* 92 Colo. 518, 523, 22 P. (2d) 1109, the court said that: "The substance of the defendant's right to a jury trial on the question of insanity has been preserved; the procedure only has been changed. The constitutional provision concerning the inviolability of jury trials does not prohibit the Legislature from changing the method of raising the question of insanity. Nor does the requirement that in order to raise the question of insanity, the defendant must plead it in the specified manner, offend against the due process clause of the Constitution." citing cases.

I furthermore would respectfully call attention to the fact that the quotation from the Ingles case, supra, contained in the opinion of the Court to the effect that evidence of insanity may be introduced for the purpose of "reducing the grade of the crime from murder of the first degree to murder of the second degree," may not presently be accepted as the rule of law in this jurisdiction because of its qualification and modification in *Battalino v. People,* 118 Colo. 587, 593, 199 P. (2d) 897, quoted with approval and adhered to in *Berger v. People,* 122 Colo. 367, 385, 386, 224 P. (2d) 228. In the Battalino case, supra, it was held "that the basis of admissibility of evidence as to insanity on the issue of the degree of homicide is not dependent upon its relevancy to insanity as such, but rather on its relevancy to wilful-

ness and deliberation in the killing." We departed from the minority rule that partial insanity may be a mitigating element in determining the degree of crime, and adopted in the Battalino case, the majority rule that "a claim of insanity cannot be used for the purpose of reducing a crime of murder in the first degree to murder in the second degree or from murder to manslaughter. If the perpetrator is responsible at all in this respect, he is responsible in the same degree as a sane man; and if he is not responsible at all, he is entitled to acquittal in both degrees." Evidence of insanity before and at the time of the commission of the alleged offense may not be introduced for the express purpose of reducing the degree of the crime, but testimony relating to the condition of mind is always admissible on the issues of intent, deliberation and premeditation. Insanity, as such, is in itself an element of crime and becomes pertinent in a criminal proceeding only when interjected by special pleas. Where proven, the accused cannot be convicted of any crime, for the reason that he is unaccountable for his actions. There doubtless are borderline cases where a criminal might be said to be legally sane and yet his mental faculties so impaired as to prevent that degree of premeditation and deliberation which would subject him to conviction of first degree murder, but in no wise can this situation be said to be in "mitigation," notwithstanding that the effect would be to lessen the degree of the crime.