360 A.2d 914
**COMMONWEALTH of Pennsylvania**

**v.**

**Michael Nickles WALZACK, Appellant.**

Supreme Court of Pennsylvania.

Argued April 25, 1974.

Decided July 6, 1976.

Robert C. Lear, Public Defender, Stroudsburg, Michael J. Wetmore, Tannersville, for appellant.

James F. Marsh, Dist. Atty., C. Daniel Higgins, Asst. Dist. Atty., Stroudsburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Today we must decide whether psychiatric evidence is admissible to be evaluated by the jury when an accused offers it to negate the element of specific intent required for a conviction of murder of the first degree thereby reducing the crime to murder of the second degree.[1] We

1. This crime occurred on June 17, 1969, and is therefore governed by the Penal Code of 1939, Act of June 24, 1939, P.L. 872, § 701, 18 P.S. 4701. Under the present Crimes Code, Act of March 26, 1974, P.L. 213, No. 46, § 4, 18 Pa.C.S. § 2502 (Supp.1975–76), the

are persuaded by the vast weight of authority that psychiatric evidence should be admissible for this purpose and, therefore, we hold that the learned court below erred in excluding the proffered testimony from the jury's consideration.[2]

Prior to analyzing the specific facts of this case, it is necesssary to clarify what we do not decide in today's opinion. First, appellant has not raised the defense of

negation of a specific intent to kill would reduce the crime to murder of the third degree.

2. *United States v. Brawner,* 153 U.S.App.D.C. 1, 471 F.2d 969 (1972); *People v. Henderson,* 60 Cal.2d 482, 35 Cal.Rptr. 77, 386 P.2d 677 (1963); *People v. Gorshen,* 51 Cal.2d 716, 336 P.2d 492 (1959); following *People v. Wells,* 33 Cal.2d 330, 202 P.2d 53 (1949) (dissents on other grounds); *Becksted v. People,* 133 Colo. 72, 80, 292 P.2d 189, 194 (1956); *Leick v. People,* 131 Colo. 353, 362, 281 P.2d 806, 811 (1955); *Battalino v. People,* 118 Colo. 587, 589, 199 P.2d 897, 899 (1948); *Ingles v. People,* 92 Colo. 518, 524, 22 P.2d 1109, 1112 (1933); *State v. Gramenz,* 256 Iowa 134, 126 N.W.2d 285 (1964); *State v. DiPaolo,* 34 N.J. 279, 168 A.2d 401 cert. denied, 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961); modified in *State v. Sikora,* 44 N.J. 453, 210 A.2d 193 (1965); *State v. Padilla,* 66 N.M. 289, 347 P.2d 312 (1959); *People v. Moran,* 249 N.Y. 179, 163 N.E. 553 (1928); *People v. Colavecchio,* 11 A.D.2d 161, 202 N.Y.S.2d 119 (1960). American Bar Foundation, The Mentally Disabled and the Law (1962); A.L.I.Model Penal Code, § 4.02(1) (proposed official draft) (1962); MacDonald, Psychiatry and the Criminal (1969); Menninger, The Crime of Punishment (1968); Diamond and Louisell, The Psychiatrist as an Expert Witness: Some Ruminations and Speculations, 63 Mich.L.Rev. 1335 (1965); Katz, Law, Psychiatry, and Free Will, 22 U.Chi.L.Rev. 397 (1955); Kaplan, Punishment and Responsibility in Aquarius, 20 Buff.L.Rev. 181 (1970); Pouros, The Psychiatrist's Role in Determining Accountability for Crimes: The Public Anxiety and an Increasing Expertise, 52 Marq.L.Rev. 380 (1969); Taylor, Partial Insanity as Affecting the Degree of Crime—A Commentary on *Fisher v. United States,* 34 Calif.L.Rev. 625 (1946); Weihofen and Overholser, Mental Disorder Affecting the Degree of a Crime, 56 Yale L.J. 959 (1947); Woodbridge, Some Unusual Aspects of Mental Irresponsibility in the Criminal Law, 29 J.Crim.Law & Criminology 822 (938–39); Comment, *Commonwealth v. Ahearn;* Psychiatric Testimony Ruled Inadmissible in Murder Trial to Show Lack of Deliberation and Premeditation, 71 Dick.L.Rev. 100 (1966); *Commonwealth v. Weinstein:* Psychiatric Testimony in Pennsylvania, 33 U.Pitt.L.Rev. 650 (1972); Note, Diminished Responsibility and Psychiatric Testimony in Pennsylvania, 28 U. Pitt.L.Rev. 679 (1967); English Homicide Act, 1957, 5 & 6 Eliz. II, c. 11, § 2(1); see *Regina v. Dunbar,* 41 Cr.App.R. 182 (1957).

insanity and today's decision in no way affects the vitality of the M'Naghten test as the sole standard in this Commonwealth for determining criminal responsibility where the actor alleges mental illness or defect.[3] Second, for reasons that will be discussed hereinafter, we do not view the position adopted today as inferentially accepting the irresistible impulse test which we have previously expressly rejected.[4] Third, we do not here reach the question of the applicability of the principles announced herein to crimes requiring a specific intent other than murder of the first degree.

Appellant, Michael Walzack, was tried before a jury and convicted of murder of the first degree in the shooting death of one Ole Toasen. Following a penalty hearing, appellant was sentenced to life imprisonment. Post-trial motions for a new trial and in arrest of judgment were filed and denied and this direct appeal followed.[5]

During the trial, the defense admitted the killing and attempted to establish its position through the testimony of appellant and a Dr. Willis. When called to the stand, the defense made an offer of proof indicating that the witness did not intend to contest appellant's sanity at the time of the incident, under the M'Naghten standard. The defense conceded that appellant was sane; that he

3. This Commonwealth has long relied on the M'Naghten test to determine mental capacity for criminal liability for one's act, *Commonwealth v. Mosler,* 4 Pa. 264 (1846), and we have repeatedly declined suggestions that we abandon this standard and adopt another. See, e. g., *Commonwealth v. Melton,* 406 Pa. 343, 178 A.2d 728 (1962), cert. denied, 371 U.S. 851, 83 S.Ct. 93, 9 L. Ed.2d 87 (1962); *Commonwealth v. Tyrrell,* 405 Pa. 210, 174 A.2d 852 (1961); *Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A.2d 98 (1960); *Commonwealth v. Elliott,* 371 Pa. 70, 89 A.2d 782 (1952).

4. *Commonwealth v. Myers,* 444 Pa. 465, 471, 282 A.2d 347, 350 (1971).

5. Jurisdiction for this appeal is pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. § 211.202(1).

could tell the difference between right and wrong and that he knew the nature and quality of his act. The single stated purpose in offering the witness was to demonstrate that as a result of a surgical procedure, a lobotomy, which appellant had undergone, he did not possess sufficient mental capacity to form the specific intent required for a conviction of murder of the first degree.[6]

In rejecting the psychiatric evidence, the trial court relied on a number of our earlier closely divided decisions. *Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A. 2d 687 (1971) (majority opinion by Bell, C. J., concurring opinion by Barbieri, J., dissenting opinion by Roberts, J., in which Jones and Pomeroy, JJ., joined); *Commonwealth v. Weinstein*, 442 Pa. 70, 274 A.2d 182 (1971) (opinion in support of affirmance of judgment by Bell,

---

**6.** While the offer was not as precise as it might have been, the reference to "diminishing the degree of responsibility of the Defendant for this crime" was sufficient to alert the trial judge of the intended purpose of the testimony. In this area, nomenclature has been a source of obfuscation. The concept has been referred to as partial responsibility, diminished responsibility and partial insanity. Criminal Law, LaFave & Scott, p. 326. Probably, the most accurate label would be "diminished capacity" since the thrust of the doctrine relates to the accused's ability to perform a specified cognitive process. See *Commonwealth v. Tomlinson*, 446 Pa. 241, 257, n. 3, 284 A.2d 687, 695, n. 3 (1971) (Dissenting Opinion, ROBERTS, J., in which Mr. Chief Justice JONES and Mr. Justice POMEROY joined):

"Although the terms 'partial' and 'diminished' responsibility are the common vehicles used by writers and courts to describe the theory we discuss today, they are highly misleading. They connote that the defendant is somehow not fully responsible for his actions. In actuality the defendant is fully responsible, but only for a crime which does not require the elements of premeditation and deliberation."

In *State of New Mexico v. Padilla, supra,* the Supreme Court of New Mexico advised:

"The doctrine contended for by the defendant is sometimes referred to as that of 'diminished' or 'partial responsibility.' This is actually a misnomer, and the theory may not be given an exact name. However, it means the allowing of proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design. In other words, it contemplates full responsibility, not partial, but only for the crime actually committed." 66 N.M. 289 at 292, 347 P.2d 312 at 314.

C. J., Eagen and O'Brien, JJ., concurred in the result, opinion in support of reversal of judgment by Roberts, J., in which Jones and Pomeroy, JJ., joined); *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A.2d 644 (1969) (opinion in support of affirmance of judgment by Bell, C. J., opinion in support of reversal of judgment by Roberts, J., in which Jones, J., joined, Cohen, J., dissented); *Commonwealth v. Phelan*, 427 Pa. 265, 234 A.2d 540 (1967) (majority opinion by Eagen, J., concurring opinion by Bell, C. J., dissenting opinion by Roberts, J., Cohen, J., dissented); *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A.2d 561 (1966) (majority opinion by Bell, C. J., dissenting opinion by Roberts, J., in which Jones, J., joined, dissenting opinion by Cohen, J.). In view of our holding today, that this evidence should be allowed, our prior cases, to the extent that they suggest the contrary, are expressly overruled.

◼ Appellant was charged with and convicted of murder of the first degree. The Legislature defined the elements of this crime as:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of *willful, deliberate and premeditated killing*, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree." (Emphasis added). Penal Code, Act of June 24, 1939, P.L. 872, § 701.[7]

Under this section the term "willful, deliberate and premeditated" describes the mental state that must accompany the act before a nonfelony murder can be murder of the first degree. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (filed January 1976); *Commonwealth v. Fostar*, 455 Pa. 216, 221, 317 A.2d 188, 190 (1974); *Commonwealth v. Bricker*, 458 Pa. 367, 370, 326 A.2d

7. See n. 1 *supra*.

279, 281 (1974); *Commonwealth v. Alston,* 456 Pa. 128, 129, 317 A.2d 229, 231 (1974); *Commonwealth v. Mosley,* 444 Pa. 134, 279 A.2d 174 (1971); *Commonwealth v. Hornberger,* 441 Pa. 57, 170 A.2d 195 (1970); *Commonwealth v. Ewing,* 439 Pa. 88, 264 A.2d 661 (1970); *Commonwealth v. Jones,* 355 Pa. 522, 525–526, 50 A.2d 317, 319 (1947).[8]

It is axiomatic that the Commonwealth must prove each element of a crime beyond a reasonable doubt. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L. Ed.2d 508 (1975); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969); *Commonwealth v. Graves,* 461 Pa. 118, 124, 334 A.2d 661, 665 (1975); *Commonwealth v. Rose,* 457 Pa. 380, 389, 321 A.2d 880, 884 (1974); *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A. 2d 880 (1959). It is equally as clear that the requisite intent of an offense is one of the elements of the crime. *Mullaney v. Wilbur,* supra; *In Re Winship,* supra; *Commonwealth v. Graves,* supra; *Commonwealth v. Rose,* supra; *Commonwealth v. Bonomo,* supra. Consequently, in the instant trial, it was incumbent upon the Commonwealth to prove beyond a reasonable doubt that appellant had the specific intent to kill to support the finding of murder of the first decree.

**8.** In *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947), we stated:

"Apart from the felonious killings which are made murder in the first degree by statute because perpetrated by means of poison or by lying in wait or committed in the perpetration of or the attempt to perpetrate one of the statutorily enumerated felonies (Act of June 24, 1939, P.L. 872, Sec. 701, 18 P.S. § 4701), "the main distinction of murder in the first from that of the second degree" lies in the specific intent to take life required for the former: *Commonwealth v. Iacobino,* supra [319 Pa. 65, 67–68, 178 A. 823]; *Commonwealth v. Robinson,* 305 Pa. 302, 308, 157 A. 689; *Commonwealth v. Gibson,* 275 Pa. 338, 342, 119 A. 403. *Such intent supplies the qualities of willfulness, deliberation and premeditation otherwise essential, by the statute, to murder in the first degree.*" (Emphasis supplied) 355 Pa. 522 at 525–26, 50 A.2d 317 at 319.

█ Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value. *Commonwealth v. Jones*, 459 Pa. 62, 66, 327 A.2d 10, 13 (1974); *Commonwealth v. McCusker*, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972). We have cited with approval the test for relevance propounded by two leading evidentiary authorities, Wigmore and McCormick. *Commonwealth v. Jones*, supra; *Commonwealth v. Lippert*, 454 Pa. 381, 384, 311 A. 2d 586, 587 (1973); *Commonwealth v. McCusker*, supra. Wigmore defines relevance in terms of two axioms, "None but facts having rational probative value are admissible," and, "All facts having rational probative value are admissible, unless some specific rule forbids." 1 Wigmore, Evidence § 9–10 at 289–95 (3rd Ed. 1940). McCormick suggests the following for determining relevance, ". . . [d]oes the evidence offered render the desired inference more probable than it would be without the evidence? . . . Relevant evidence then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." McCormick, Evidence § 185 at 437–38 (2nd Ed. 1972).

██ In the instant case, appellant attempted to introduce expert testimony concerning his mental capacity to form the type of specific intent a conviction for murder of the first degree requires. This testimony obviously would have "significantly advanced the inquiry" as to the presence or absence of an essential element of the crime. See *Commonwealth v. Hickman*, 453 Pa. 427, 433–434, 309 A.2d 564, 567 (1973). Thus, the exclusion of the proffered testimony cannot be based upon a lack of relevancy. Also, there is no basis for finding the tendered testimony incompetent for other reasons. Although early decisions in this jurisdiction can be found that express doubt as to the reliability of psychiatric testimony, our more recent decisions make clear that psychiatry has a legitimate scientific basis. While recogniz-

ing that psychiatry might well be less exact than some of the other medical disciplines we are nevertheless cognizant of the "tremendous advancements made in the field." *Commonwealth v. McCusker*, supra at 385, 292 A.2d at 287. In *Commonwealth v. McCusker*, supra, after noting many of the areas in criminal law where we have accepted a psychiatrist's opinion we observed:

> ". . . [t]he reliance we have consistently placed upon the competence of psychiatric evidence belies any concern that it is not a sufficiently recognized and accepted medical science capable of offering quality expert guidance." *Id.* at 392, 292 A.2d at 291.[9]

We have long accepted psychiatric evidence on the issue of whether an accused is competent to stand trial.[10] Similarly, we have long permitted psychiatric evidence under the M'Naghten test to determine whether an accused was insane at the time of the crime.[11] More recently we have allowed psychiatric evidence for the purpose of determining whether an accused acted in the heat of pas-

---

9. In his dissenting opinion, Mr. Justice EAGEN concedes that, "The science of psychiatry has advanced materially in recent years and undoubtedly is now able to present reliable information as to human behavior in certain situations; . . . ." Mr. Justice Eagen premises his dissent, however, on his *personal* belief that in some areas psychiatry is not reliable. With all due respect it appears to be inconsistent to accept the general reliability of a science and fail to recognize that part of the determination of reliability necessarily includes a judgment that the discipline is capable of recognizing its limitations.

Moreover, we are disturbed by the implicit expression of distrust of the judgment of the citizens of this Commonwealth who comprise our juries. The fact that testimony is offered does not necessitate its acceptance. An excellent example is the Hearst case alluded to by Mr. Justice Eagen where the jury rejected the testimony of some of the nation's most reknowned psychiatrists.

10. *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (1959); *Commonwealth v. Moon*, 383 Pa. 18, 117 A.2d 96 (1955); *Commonwealth v. Scovern*, 292 Pa. 26, 140 A. 611 (1928).

11. *Commonwealth v. Melton*, 406 Pa. 343, 178 A.2d 728, cert. denied, 371 U.S. 851, 83 S.Ct. 93, 9 L.Ed.2d 87 (1962); *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960).

sion when committing a homicide;[12] whether an accused subjectively believed he was in imminent danger of death or serious bodily injury under his claim of self-defense;[13] whether an accused was capable of making a detailed written confession;[14] and, we have long accepted psychiatric evidence at the penalty stage of trial.[15]

 Having determined that psychiatric evidence possesses sufficient reliability for its admission for the purposes announced herein we must acertain whether there are any policy reasons that might justify ruling it incompetent. Early opinions of this Court have suggested that acceptance of the doctrine of diminished capacity is tantamount to acceptance of the irresistible impulse test for insanity.[16] We do not agree. The doctrines of

12. *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972).

13. *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974).

14. *Commonwealth v. Jones,* 459 Pa. 62, 327 A.2d 10 (1974).

15. *Commonwealth v. McCusker,* 448 Pa. 382, 392 n. 15, 292 A.2d 286, 291, n. 15 (1972); *Commonwealth v. Wooding,* 355 Pa. 555, 50 A.2d 328 (1947); *Commonwealth v. Hawk,* 328 Pa. 417, 421, 196 A. 5, 7 (1938); *Commonwealth v. Stabinsky,* 313 Pa. 231, 238, 169 A. 439, 442 (1933). In *Commonwealth v. Wooding, supra,* we stated:

> It is, of course, true that the jury is entitled to be informed of all the circumstances and conditions properly to be regarded as relevant to the determination of the penalty; therefore it has been held that testimony concerning the mental incapacity of a defendant charged with murder, even though short of insanity, is admissible for that purpose: *Commonwealth v. Stabinsky,* 313 Pa. 231, 169 A. 439; *Commonwealth v. Hawk,* 328 Pa. 417, 421, 422, 196 A. 5, 7, 355 Pa. at 359, 50 A.2d at 329.

16. In *Commonwealth v. Ahearn,* 421 Pa. 311, 218 A.2d 561 (1966), Mr. Chief Justice Bell, writing for the Court, equated the concept of diminished capacity with irresistible impulse:

> Neither defendant's psychiatrists nor any of his witnesses, we repeat, testified that defendant was insane under the M'Naghten Rule. The testimony of defendant's experts, if believed, would establish an irresistible impulse to violence in certain sexual situations. Psychiatric names or definitions vary or change almost as rapidly as "bridge conventions"; and the use of terms such as "irresistible impulse," or "diminished responsibility", or "inability to control oneself", or "temporary partial insanity", or *various kinds of psychopaths,* are not suffi-

diminished capacity and irresistible impulse involve entirely distinct considerations. Irresistible impulse is a test for insanity which is broader than the M'Naghten test. Under the irresistible impulse test a person may avoid criminal responsibility even though he is capable of distinguishing between right and wrong, and is fully aware of the nature and quality of his act provided he establishes that he was unable to refrain from acting. An accused offering evidence under the theory of diminished capacity *concedes general criminal liability.* The thrust of this doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislature for the commission of a certain degree of the crime charged.

In adopting the position we announce today, we are buttressed by the fact that many jurisdictions in the country accept this view.[17] Of these jurisdictions, a number of them embrace the M'Naghten rule as we do.[18]

In recognizing the validity of this doctrine, the Supreme Court of Colorado reasoned:

"A defendant in a first degree murder case has the right, without reference to a plea of insanity, to establish mental deficiency as bearing upon his capacity to

cient to change what the psychiatrists used to call and what, in legal language, has always been called, an irresistible impulse.

\* \* \* \* \* \* \* \* \* \*

"The doctrine of 'irresistible impulse' or in the modern psychiatric vernacular 'inability to control one's self', whether used to denote legal insanity, *or as a device to escape criminal responsibility for one's acts or to reduce the crime or its degree, has always been rejected in Pennsylvania.*"

See also those cases which relied principally on *Commonwealth v. Ahearn, supra,* for example, *Commonwealth v. Tomlinson, supra; Commonwealth v. Weinstein, supra; Commonwealth v. Rightnour, supra; Commonwealth v. Phelan, supra.*

17. See authorities cited in Footnote (2), *supra.*

18. *People v. Henderson, supra; People v. Gorshen, supra; Becksted v. People, supra; Leick v. People, supra; Battalino v. People, supra; State v. Gramenz, supra; People v. Moran, supra; People v. Colavecchio, supra.*

form the specific intent essential to first degree murder." *Becksted v. People*, 133 Colo. 72, 292 P.2d 189 (1956).

See, also, *Battalino v. People*, 118 Colo. 587, 199 P.2d 897 (1948); *Leick v. People*, 131 Colo. 353, 281 P.2d 806 (1955). In a more expansive explanation of the rationale supporting this view, the Iowa Supreme Court stated:

We believe that failure to recognize there can be an unsoundness of mind of such a character as to negative a specific intent to commit a particular crime, is to ignore the great advancements which have been made in the field of psychiatry. The results which have been achieved confirm its growing reliability. We do not consider this position contradictory to our adherence to the right and wrong test of insanity. We do not pretend there are no mental disorders except those which qualify under this test, but rather limit the defense of insanity to the types of mental illness in which the defendant cannot comprehend the nature or consequences of his act. Weihofen in his text Mental Disorder as a Criminal Defense states that if we recognize the basic principle that a person should not be punished for a crime if he did not entertain the requisite state of mind, "there is no logical escape from the proposition that a person cannot be held guilty of a deliberate and premeditated killing when he did not deliberate and premeditate, and indeed was incapable of deliberating and premeditating. If, however, he was able to understand the nature of the act he was committing and if he intended to do that act, he should be held guilty of murder in the second degree or manslaughter. There is no logic in the 'all or nothing' assumption underlying so many court opinions on the subject—that a person is either 'sane' and wholly responsible for all his acts, or 'insane' and wholly

irresponsible." [19] *State v. Gramenz*, 256 Iowa 134, 126 N.W.2d 285 (1964).

██ Once it is determined that the proffered evidence was both relevant and competent, due process requires its admission. Article I, Section 9 of the Pennsylvania Constitution sets forth the rights of an accused in criminal prosecutions.

> "Even the most myopic interpretation of this clause would necessarily concede the right to offer relevant evidence to challenge a material issue of fact." *Commonwealth v. Graves*, supra, at 334 A.2d at 665, n. 7.[20]

It is inconsistent with fundamental principles of American jurisprudence to preclude an accused from offering relevant and competent evidence to dispute the charge against him. This, of course, includes any of the elements that comprise that charge.

Judgment of sentence reversed and a new trial awarded.

19. Legal textwriters and authorities are virtually unanimous in their approval of the position we adopt today. The foremost is, perhaps, the American Law Institute's Model Penal Code. In Section 4.02 of the proposed official draft the institute provides: "Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense."
Others are too numerous to single out. See, e. g., authorities cited in Footnote (2) *supra.*

20. In a footnote in his dissent Mr. Justice EAGEN makes reference to a recent statutory enactment, House Bill 826 (1975 session), eff. April 7, 1976, amending Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 308. Although it is suggested this legislation was in response to this Court's decision in *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975), accuracy dictates that we here note that this provision specifically reversed the position taken by the legislature in the recent Crimes Code, *supra*, enacted three years prior to our decision in *Commonwealth v. Graves, supra.* Further, while the rationale of this new provision may be interpreted to be at variance with the view this Court expressed in *Commonwealth v. Graves, supra*, it is also at odds with the earlier view of this Court as articulated in *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971) (Eagen, J.).

224

EAGEN, J., filed a dissenting opinion in which O'BRIEN, J., joins.

EAGEN, Justice (dissenting).

In *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), a majority of this Court overruled a multitude of prior decisions and held that psychiatric testimony is admissible at trial to aid the fact finder in determining if one who kills another did so in the heat of passion. Today a majority of the Court takes a further leap into the unknown and attributes to the science of psychiatry the ability to say with a reasonable degree of certainty that the instant killer, *who admittedly was sane and acted with malice and had the mental capacity to know what he was doing and to know what he was going was wrong*, lacked the mental capacity to form a specific intent to kill.[1] I dissented in *McCusker*, and I dissent here again.

The science of psychiatry has advanced materially in recent years and undoubtedly is now able to present reliable information as to human behavior in certain situations; however, the psychiatric testimony, here involved, is so patently devoid of reliability it should not receive judicial sanction.

Some psychiatrists will continue to dig up excuses for criminal behavior (as witness, the recent Hearst trial) even though some such "excuses" may border on the ridiculous and be totally lacking in scientific reliability. Unfortunately, some members of the judiciary will join them in accepting these excuses.

As to the assertion by the majority that the views of this writer on the present reliability of psychiatric testimony are *personal*, I submit that my position represents

---

1. Compare this opinion with that in *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975), which gave rise to public furor several months ago. To the eternal credit of the Pennsylvania Legislature, *Graves* was nullified through recent legislation.

the long and well established view that such testimony is not admissible for the purposes which the majority now holds it admissible. Moreover, nothing in the record before this Court shows this testimony is anymore reliable today than yesterday. Because the trial court had no power to overturn our prior rulings, it did not hear evidence to establish the reliability of this testimony. Yet the majority reverses our prior rulings based not on a showing of reliability in the record but on *their personal* knowledge and beliefs about psychiatry. If the majority is concerned with facts, they would at least remand the case for a hearing on reliability. Thus, while I defer to the well established rule, the majority not only expresses their personal beliefs, they subject the entire Commonwealth to those beliefs and they do so in the face of division as to the reliability of such testimony even within the psychiatric field. See, "Mercenary Psychiatry", *New Republic* March 10, 1976.

The majority also states my position represents an expression of distrust of the judgment of the citizens of this Commonwealth. To the contrary, my trust in citizens serving as jurors has never and is not now waning. My concern is with submitting unreliable evidence to those jurors and thereby complicating their deliberations. I do not think jurors should have to evaluate evidence which has not been shown to be reliable.

Further, the majority correctly notes that the legislative response to *Commonwealth v. Graves*, supra, also repudiated a previous legislative determination. What the majority fails to note is that the legislative provision was little known and that *Commonwealth v. Graves*, supra, caused the public furor. Finally, the legislative response is indeed contrary to the views expressed by me in *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971) but *Tarver* merely reiterated the well established law of Pennsylvania, see *Commonwealth v. Eyler*, 217 Pa. 512, 66 A. 746 (1907); *Tarver* did not change the law of

226

Pennsylvania as did *Graves,* supra, and as does today's decision merely because of the personal views of a majority of this Court as to the reliability of psychiatric testimony.

O'BRIEN, J., joins in this dissent.